OPINION
{¶ 1} Defendant-appellant David Combs appeals from his conviction and $25 fine for violating the requirement in R.C. 4503.21 that a motorist "shall [not] fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark," i.e., the license plate. Combs contends that his conviction is not supported by sufficient evidence, and is against the manifest weight of the evidence. In support of these contentions, Combs argues that the offense of which he was convicted is not a strict liability offense, so that proof of recklessness was required. He also contends that the trial court erred by failing to compel the prosecution to produce certain requested evidence, and that the trial court erred by not dismissing the charge as a consequence of the State's having allegedly destroyed and withheld evidence.
 {¶ 2} We conclude that the offense proscribed by R.C. 4503.21, a minor misdemeanor, is a strict liability offense. We conclude that the evidence in the record, in the form of the testimony of Douglas Collie, the Fairborn police detective who issued the citation, and a photograph of the license plate on the truck Combs was driving, which Collie testified fairly and accurately depicted the condition of the license plate at time that Combs was stopped and cited, was sufficient to support Combs's conviction. We also conclude that although there was conflicting evidence, the conviction is not against the manifest weight of the evidence.
 {¶ 3} We further conclude that the record does not support Combs's claim that the State destroyed or withheld evidence. Nor does the record support a conclusion that the trial court failed to order produced any evidence that Combs had a right to have an order of production. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} Douglas Collie, a Fairborn police detective, received information from the Cincinnati Drug Enforcement Agency office that a vehicle, which he later determined to be the truck Combs was driving, would be coming north from a Kentucky laboratory manufacturing methamphetamine, a controlled substance. The DEA wanted this vehicle stopped, if it could be stopped for a traffic violation.
 {¶ 5} Collie was in an unmarked vehicle. He followed Combs on Interstate 675. Combs was traveling at speeds between 80 and 90 miles per hour, well above the posted speed limit, but Collie could not effectuate a traffic stop, since he was in an unmarked vehicle. Eventually, Collie was able to make contact with a uniformed officer on the Sugarcreek Township police force, who turned out to be Vince Chalecki. Collie testified that: "When I was following the vehicle up 675, I noticed that the license plate, it was a mixture of being dirty and bent to where you could only read the last 4 numbers of the license plate."
 {¶ 6} By the time Chalecki was in visual contact with Combs's vehicle, Combs had slowed to below the speed limit, and had pulled over to the slow lane. Chalecki effected a stop, and got Combs's driver's license. Collie approached Combs, and issued him a citation for failing to display a license plate properly.
 {¶ 7} The day before trial, Combs caused a subpoena duces tecum to be served upon Collie, requiring Collie to bring with him, among other things, "all videos by the Sugar Creek Police Department and all photographs of the vehicle license plate, defendant, interior of the car or any other video or photographs in the possession of Law Enforcement." At trial, Collie appeared and testified, and a number of photographs were made available to Combs. No videotape was available at the trial.
 {¶ 8} At the conclusion of the trial, the trial court found Collie's testimony to be credible, and specifically declined to credit Combs's testimony to the extent that it contradicted Collie's testimony. Combs was found guilty of the license plate display violation, and was fined $25 and court costs.
 {¶ 9} From his conviction and fine, Combs appeals.
 II {¶ 10} Combs's First and Second assignments of error are as follows:
 {¶ 11} "THE TRIAL COURT ERRED IN NOT DISMISSING CHARGES AGAINST APPELLANT AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT.
 {¶ 12} "THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILT AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Our first task is to resolve a dispute concerning the requisite mental culpability state for this offense. The State contends that it is a strict liability offense. Combs contends that the usual default culpability state — recklessness — applies, because the statute does not specify a culpability state.
 {¶ 14} R.C. 4503.21 does not specify a culpability state. R.C.2901.21(B) provides:
 {¶ 15} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient capability to commit the offense."
 {¶ 16} Combs cites State v. Frazier, 2003-Ohio-1216, for the proposition that recklessness is required. That case involved a violation of an ordinance corresponding to R.C. 4549.08, prohibiting driving a vehicle with a false or fraudulent license plate, a misdemeanor of the fourth degree. As the court noted in its opinion, a driver of someone else's vehicle might have no way of determining whether the licence plates on the vehicle are legitimate. By contrast, a driver can determine, by inspection, whether the license plates are properly displayed. Also, a fourth degree misdemeanor subjects the offender to possible incarceration; a minor misdemeanor does not.
 {¶ 17} Offenses constituting moral condemnation, or for which imprisonment may be imposed, should not be strict liability offenses.State v. Brewer (1994), 96 Ohio App.3d 413, 645 N.E.2d 120.
 {¶ 18} Although the issue is not free from difficulty, we agree with the State that the evident purpose underlying R.C. 4503.21 militates in favor of construing it as a strict liability offense. The purpose is evidently to facilitate the tracing of a vehicle back to its owner. This is important if the vehicle is stolen, if it is involved in criminal activity, or if it is involved in a collision, perhaps killing or incapacitating the occupants. In our view, this purpose would be seriously compromised if, in order to prove a violation of the statute, the State would have to prove that the driver was reckless in failing to realize that his license plate was not clearly readable. That the offense is only a minor misdemeanor, carrying a maximum fine of $150, R.C. 2901.02(G)(2), is consistent with this view.
 {¶ 19} Collie's testimony is sufficient to support the necessary finding that Combs failed to display the license plate of the truck he was driving, in plain view. Collie testified that he followed Combs on Interstate 675, and was, for at least a portion of the time, in the same lane directly behind Combs. He testified that he could not read the license plate, and that State's Exhibit 1 is a photograph of the license plate that fairly and accurately depicts the license plate as it appeared to him while he was following Combs. That photograph, which is in the record, shows a partially obscured license number, ending in "C 4763," but with the preceding letters not visible, due to bending of the license plate, dirt, or both.
 {¶ 20} The defense offered additional photographs of the license plate, being Defendant's Exhibits A through E. Collie only vouched for the accuracy of one of these — Exhibit A. Even in that photograph, the initial letter, evidently "P," is not clearly visible, but the license plate is not visibly bent. Collie accounted for this discrepancy by testifying that he believed another officer at the scene bent the plate back after the stop was made.
 {¶ 21} Combs testified, and his testimony contradicted that of Collie. Combs testified that as soon as he was stopped, he got out of his truck, was told the basis for the stop, went to the back of the truck, and saw the license plate, unbent, and clearly visible. Collie testified in rebuttal, contradicting this testimony.
 {¶ 22} Ordinarily, issues of credibility are for the finder of fact — in this case, the trial judge — to determine. State v. Lawson (1997), Montgomery App. No. 16288. A conviction should not be reversed as being against the manifest weight of the evidence unless the reviewing court finds, from the record, that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Mitchell, 2001-Ohio-1628, Montgomery App. No. 18738. We are unable to find from this record that the trial court "clearly lost its way."
 {¶ 23} In his brief, Combs argues that the trial court applied an incorrect test, when it noted that it had "to determine whether or not this plate issue gave Detective Collie and the other officer, Officer Chalecki, the right to stop the vehicle." From our review of the transcript, it is clear that the trial court was responding to a point made by defense counsel, earlier during the trial, that Collie and the other officers, as a result of the request from the Drug Enforcement Agency, were determined to stop Combs one way or the other. The trial court correctly noted that pretextual stops are permitted under the authority of Dayton v. Erickson (1996), 76 Ohio St.3d 3, and then went on to trace the requirement for a proper stop — in this case, the perceived license plate violation. Before announcing its verdict, the trial court analyzed the evidence in the record, finding Collie's testimony credible, and Combs's testimony not credible, before making a finding of guilty. We conclude that the record does not overcome the presumption that the trial court applied the correct burden of proof beyond reasonable doubt.
 {¶ 24} Combs's First and Second assignments of error are overruled.
 III {¶ 25} Combs's Third Assignment of Error is as follows:
 {¶ 26} "THE TRIAL COURT WAS IN ERROR WHEN IT FAILED TO COMPEL THE PROSECUTION TO PRODUCE REQUESTED EVIDENCE."
 {¶ 27} As the trial court correctly noted, no discovery was ever requested by Combs. A subpoena duces tecum was served on Collie, but Combs concedes, in his brief, that it was not signed and sealed by the clerk of courts, as required by Crim. R. 17(A).
 {¶ 28} The only thing that Combs has identified as not having been made available to him is a videotape that he believes was in the possession of the Sugarcreek Township Police Department, presumably produced by a video camera in Officer Chalecki's cruiser. No allegation has ever been made that this videotape, if one ever existed, was ever in the possession of Douglas Collie, the Fairborn police detective upon whom the subpoena was served. Combs cites no authority, and we are aware of none, that would stand for the proposition that Collie, even if he had been served with a proper subpoena on the eve of trial, would have had an obligation to produce a videotape that was not in, and had never been in, either his possession or the possession of his police department.
 {¶ 29} At trial, the prosecutor had certain photographs in her possession, and the record reflects that all of these were made available to Combs. The record fails to establish that any exculpatory evidence was withheld from Combs. Although Combs's attorney at one point hypothesized the existence of a videotape of the stop, there is nothing in the record to reflect that any videotape ever existed, much less that it was exculpatory.
 {¶ 30} Combs cites State v. Combs, 2004-Ohio-6574, Delaware App. No. 03CA-C-12-073, apparently for the proposition that the destruction or withholding of a videotape of a traffic stop may be the basis for the reversal of a conviction. The distinction of that case from the one before us is readily apparent. In that case, the court found that there was a videotape of a traffic stop, which was destroyed against normal policy after a request to preserve it had been sent to the prosecutor. Here, there is no basis in this record for finding that there was, in fact, a videotape of the stop; there is nothing in the record to support a finding that the videotape, if there was one, was destroyed against normal policy; and there is nothing in the record to support a finding that a request to preserve the videotape, if there was one, was sent to the prosecutor.
 {¶ 31} Combs's Third Assignment of Error is overruled.
 IV {¶ 32} Combs's Fourth Assignment of Error is as follows:
 {¶ 33} "THE TRIAL COURT ERRED IN NOT DISMISSING CHARGES AS THE STATE DESTROYED AND WITHHELD EVIDENCE."
 {¶ 34} The only additional argument, not previously made in support of Combs's Third Assignment of Error, made in support of his Fourth Assignment of Error is that: "The police have admitted Detective Karen Kordish tampered with the plate." The basis in the record to support this argument lies in the following testimony of Officer Collie:
 {¶ 35} "Q. Now, has there been some change in Exhibit A as to how that license plate appeared when you first stopped the Defendant?
 {¶ 36} "A. Yes. The corner has been pulled back to represent as much of the license plate as can be displayed in that picture.
 {¶ 37} "Q. Were you present when this license plate was bent back?
 {¶ 38} "A. No, I was not.
 {¶ 39} "Q. Do you know who did it?
 {¶ 40} "A. I believe Detective Karen Kordish did.
 {¶ 41} "Q. Who is Detective Kordish with, please?
 {¶ 42} "A. She is with the Fairborn Police Department, also assigned to the Greene County A.C.E. Task Force."
 {¶ 43} From the foregoing, Combs infers bad faith. We do not ascribe to Detective Kordish's action in bending back the license plate, assuming that she did so, the sinister purpose ascribed by Combs. In support of a citation for a minor misdemeanor, the police were obviously not going to impound the truck, or the license plate (without which the truck could not have been driven away from the scene). The license plate had been photographed once in the condition it was in when Collie observed the truck being driven on Interstate 675. It was then photographed after the bent portion was unbent, showing the missing part of the number. Restoring the license plate to a proper state of visibility was necessary to permit the truck to be lawfully driven from the scene after the citation was issued. We see nothing improper in this.
 {¶ 44} Combs's Fourth Assignment of Error is overruled.
 V {¶ 45} All of Combs's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and DONOVAN, JJ., concur.