OPINION
{¶ 1} Defendant-appellant Shawn Joseph Grigley appeals from his conviction and sentence for carrying a concealed weapon and having a weapon under disability. Grigley contends that the trial court erred in overruling his motions to suppress and to *Page 2 
dismiss because the State failed to preserve materially exculpatory evidence in violation of Grigley's due process rights under theFourteenth Amendment. Grigley further contends that even if the material in question was only potentially useful, it should have been suppressed, because the police and prosecution acted in bad faith.
 {¶ 2} We conclude that the State had no duty to acquire or to preserve evidence that was never in its possession. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In mid-October, 2005, Mashawn Minnifield was a security guard at Big E Bar in Dayton, Ohio. While on duty, Minnifield was told about an argument occurring outside the bar. When Minnifield went out to the parking lot, he found two men arguing. One of the men was later identified as Grigley. Grigley went back inside the bar, and Minnifield observed the other man get inside the back seat of a car and attempt to kick out the window. The man was not successful, and left the lot.
 {¶ 4} Minnifield subsequently observed Grigley outside again. Grigley went to the same car that had been kicked, and put on a jacket. Grigley then walked around the parking lot with his arms folded across his chest. This drew Minnifield's attention. Minnifield saw Grigley with his hands in his jacket and assumed he had a gun. However, Minnifield did not know this for certain at that point.
 {¶ 5} Grigley's girlfriend came out of the bar and asked Minnifield if he could jump-start the car. Minnifield said he could not do that, but gave her his jumper cables. When Minnifield walked over to the car where Grigley was standing, Grigley's jacket was partially open and Minnifield saw the handle of a revolver. Minnifield did not say anything at this *Page 3 
time, but received his jumper cables back. Grigley then left, but told Minnifield that he was coming back. When Grigley pulled out, Minnifield called the Dayton Police Department and informed them what had happened, including the fact that Grigley had a gun and was coming back. The Police Department dispatched a crew to the scene.
 {¶ 6} Officer Brown of the Dayton Police Department was the first to arrive. Brown saw Minnifield at the side of a white car, speaking with an individual who was later identified as Grigley. When Brown pulled in, Minnifield pointed out Grigley's vehicle to Brown and indicated that this was the car and this was the man about whom Minnifield had called.
 {¶ 7} At that time, Grigley was sitting in the car. Grigley asked Minnifield if there were a problem, and Minnifield said, "Yes, you need to take your hands off the gun now." Grigley said he would put the gun in the truck, but Minnifield told Grigley that he needed to get out of the car right then. By then, the police officers were by the car. Brown told Grigley that he needed to keep his hands in view and not make any movement. Brown intended to handcuff and search Grigley for the officers' protection since they had been told about a gun.
 {¶ 8} After Grigley had been handcuffed, Minnifield approached the car where Grigley had been sitting, and saw the revolver on the front seat. While Brown was dealing with Grigley, another officer went over to the car and recovered a silver revolver with a wooden handle. Grigley was then arrested and charged with carrying a concealed weapon and having a weapon under disability.
 {¶ 9} After a hearing on October 21, 2005, a municipal court judge found probable cause and remanded Grigley to the custody of the sheriff to await the action of the grand *Page 4 
jury. A grand jury indictment was issued in November, 2005, for the same charges that had been filed in Municipal Court. The matter then proceeded in Montgomery County Common Pleas Court.
 {¶ 10} In January, 2006, Grigley filed a motion to suppress evidence, based on lack of probable cause for the search and seizure. Subsequently, in early February, 2006, Grigley filed a discovery request asking for various items, including a copy of a surveillance tape of the parking lot that Big E had allegedly made. Shortly thereafter, Grigley filed a motion to dismiss and supplement to the motion to suppress, claiming that the State had failed to provide a material and potentially exculpatory videotape of the seizure, search, and arrest.
 {¶ 11} After a hearing, the trial court issued a decision in March, 2006, overruling the motion to suppress. The court noted that the private security camera of the Big E Bar security system may have recorded the area of the tavern parking lot where Grigley was stopped. The court further observed that counsel had been given an opportunity to determine if such a video recording existed. However, the prosecutor indicated at a subsequent docket appearance that no recording was presently available.
 {¶ 12} In addition, the defense had not disputed that the security system was a private security system and that the security system was not under the control of any governmental agency. The court also stated that there was no evidence indicating that any part of the arrest or anything of significance was found on the security system. Instead, the only evidence about a videotape came from Grigley's fianceé, who claimed to have gone back inside the bar and to have watched the events unfolding on a "surveillance video." The fianceé also claimed that security and police officers later reviewed the videotape. *Page 5 
 {¶ 13} As we will discuss later, the record in this case is incomplete because Grigley failed to transcribe relevant portions. However, according to the State's brief, the trial court overruled the motion to dismiss prior to accepting Grigley's plea of no contest to both charges. The State also indicates that the trial court considered the written transcript from the preliminary hearing, which was made a part of the record. The trial court concluded that even if a video recording system existed, the system was not under the control of the police or the government.
 {¶ 14} After entering a plea of no contest to the charges, Grigley was found guilty and was sentenced to a one-year term on each charge, with the terms to be served concurrently. Grigley appeals from his conviction and sentence.
 II {¶ 15} Grigley's First Assignment of Error is as follows:
 {¶ 16} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT OVERRULED THE DEFENDANT'S MOTIONS TO SUPPRESS AND/OR DISMISS."
 {¶ 17} Under this assignment of error, Grigley contends that suppression or dismissal was appropriate because there is a reasonable probability that if the State had disclosed the alleged videotape evidence to the defense, the result of the proceedings would have been different. We disagree with Grigley.
 {¶ 18} Before we address this point, however, we should note that our review is hampered by Grigley's failure to comply with the requirements of App. R. 9(A). This rule provides that:
 {¶ 19} "A videotape recording of the proceedings constitutes the transcript of *Page 6 
proceedings other than hereinafter provided, and, for purposes of filing, need not be transcribed into written form. * * * When the transcript of proceedings is in the videotape medium, counsel shall type or print those portions of such transcript necessary for the court to determine the questions presented, certify their accuracy, and append such copy of the portions of the transcripts to their briefs."
 {¶ 20} When Grigley filed his notice of appeal, he also filed a request with the trial court, asking the court reporter to prepare and file a transcript of the proceedings in the record, including the suppression hearing. Consistent with this request, the court reporter filed a videotape transcript on May 31, 2006. However, Grigley was then required under App. R. 9(A) to type or print the portions of the videotape transcript that were needed for our review. Grigley also was required to append the pertinent portions of the transcript to his brief. This duty on the part of the appellant is reflected in both App. R. 9(A) and in Loc. R. 6 of the Second Appellate District.
 {¶ 21} "`The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. . . when portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'" In re Estate of Weiner, Montgomery App. Nos. 19533 and 19564, 2003-Ohio-3408, at]} 15, quoting from Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384. Accord, State v.King, Medina App. No. 04CA0093-M, 2005-Ohio-3455, at ]} 8-9. See, also,Daniels v. Santic, Geauga App. No. 2004-6-2570, 2005-Ohio-1101, at ]} 12 (noting that an appellate *Page 7 
court cannot review the assignments of error that depend on a transcript, where the appellant fails to comply with requirements for transcribing relevant portions of a videotape proceeding).
 {¶ 22} Based on Grigley's failure to comply with App. R. 9(A), we presume the regularity of the proceedings below and therefore affirm the judgment of the trial court. In this regard, we accept the trial court's finding as to the absence of evidence that the government or the police had control of the security system at the Big E Bar. Even if we were not required to presume the regularity of the trial court's findings, we would agree, as there was no evidence at the preliminary hearing that Big E Bar was anything other than a private entity.
 {¶ 23} In his brief, Grigley contends that an eyewitness, Jessica Eyler, testified under oath that events did not occur as Officer Brown had indicated. Grigley, therefore, claims that the version of events shown on the alleged security videotape at the bar would have provided material exculpatory evidence about the conflicting testimony and should have been preserved and disclosed to the defense. As support for this claim, Grigley relies on State v. Durnwald, 163 Ohio App.3d 361,2005-Ohio-4867, 837 N.E.2d 1234, in which the Sixth District Court of Appeals suppressed testimony and evidence because a videotape recording of a traffic stop was not preserved. The Sixth District noted inDurnwald that:
 {¶ 24} "The state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under theFourteenth Amendment to the United States Constitution. * * * The burden rests with the defendant to prove that the evidence in question was materially exculpatory. * * * Such evidence is deemed materially exculpatory *Page 8 
if `there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. ` * * * `A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' * * *
 {¶ 25} "In contrast, evidence is not materially exculpatory if it is merely potentially useful. * * * Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. * * * The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. * * * The `term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud."`" Id. at ]} 29-30 (citations omitted).
 {¶ 26} The case before us is distinguishable. The evidence involved inDurnwald was a videotape made pursuant to a regulation of the Ohio State Highway Patrol requiring videotapes to be recorded of all traffic stops, pursuits, and crash scenes. The regulation also required preservation of these videotapes until all civil or criminal actions had been completed. Id. at ]} 22. In contrast, the videotape in the present case, if any, was made by a private entity having no connection with the police department or the prosecutor. Furthermore, this tape was as readily available to the defense as it was to the prosecution.
 {¶ 27} In its decision, the trial court mentioned the testimony from Grigley's fianceé (Eyler), who claimed to have gone inside the Big E Bar while Grigley was being arrested. Eyler further claimed to have seen the events on a surveillance video of the arrest made by the bar at the time of the arrest, which occurred on October 13, 2005. Since the record *Page 9 
was not transcribed, we accept the trial court's characterization of Eyler's testimony.[1]
 {¶ 28} Because Eyler was Grigley's fianceé, we presume that both Grigley and his attorney would have known about the surveillance video early in the case. However, even if Eyler never mentioned the matter, Grigley's attorney was aware of the possible existence of the videotape by the time of the preliminary hearing, which occurred less than ten days after the arrest. In fact, Grigely's attorney specifically inquired about the videotape during the preliminary hearing, when the following exchange occurred in defense counsel's cross-examination of the security guard, Mashawn Minnifield:
 {¶ 29} "Q. Sir, is there any tape that was recovered that would have videotaped any of this?
 {¶ 30} "A. There is a camera out in the parking lot, yes.
 {¶ 31} "Q. And have you watched that tape?
 {¶ 32} "A. No, I haven't.
 {¶ 33} "Q. Is that tape still available for people to see?
 {¶ 34} "A. I'm not sure. You'd have to ask the owner of the Big E Bar." (Transcript of preliminary hearing in Dayton Municipal Court, p. 8).
 {¶ 35} Thus, Grigley's attorney knew about the possibility of a videotape days after the incident and could have tried to obtain it. This was not an item of evidence produced, maintained, or in any way controlled by the State. Accordingly, the trial court did not err in refusing either to suppress evidence or to dismiss the case based on the State's alleged failure to disclose or preserve exculpatory evidence. Accord, State v. Combs, Greene App. *Page 10 
No. 2006-CA-38, 2006-Ohio-7088, at ]} 28 (police officer did not have obligation to produce videotape that was not in his possession and had never been in the possession of the police department, even if it may have been in possession of another police department).
 {¶ 36} The First Assignment of Error is overruled.
 II {¶ 37} Grigley's Second Assignment of Error is as follows:
 {¶ 38} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE DEFENDANT'S MOTIONS TO SUPPRESS AND/0R DISMISS."
 {¶ 39} Under this assignment of error, Grigley contends that the trial court acted arbitrarily by overruling the motion to suppress and motion to dismiss because the State was required to obtain and preserve the security videotape. Because the trial court did not err in rejecting Grigley's motions, there is no abuse of discretion.
 {¶ 40} Grigley's Second Assignment of Error, therefore, is overruled.
 IV {¶ 41} Grigley's First and Second Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
[1] We also note that the trial court did not find Eyler credible. The court described her testimony as "bizarre." Decision Overruling Motion to Suppress, p. 3. *Page 1