[Cite as *State v. Ross*, **2012-Ohio-4977.**]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                          :          C.A. CASE NO.    2012 CA 16

v.                                               :          T.C. NO.    11 CRB 1399

DAVID E. ROSS, JR.                               :          (Criminal appeal from
                                             Municipal Court)

    Defendant-Appellant                         :

                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the     26th     day of       October     , 2012.

. . . . . . . . . .

RONALD LEWIS, Atty. Reg. No. 0061980, 101 N. Detroit Street, City Prosecutor's Office, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant David E. Ross, Jr. appeals his conviction and sentence

for one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Ross filed a timely notice of appeal with this Court on January 31, 2011.

{¶ 2} The incident which forms the basis for the instant appeal occurred on July 20, 2011, when deputies from the Greene County Sheriff's Office responded to a disturbance at the Spring Valley General Store and Valero Gas Station located at 1616 West Spring Valley-Paintersville Road. Upon arriving at the store, Deputy Michael Slone was informed that the owner of the store, Kamal Odeh, had been assaulted by Ross. During the call, Deputy Slone was shown video footage from a security camera inside the store by Kamal's daughter, Iman Odeh, which depicted Ross' assault of Kamal inside the store.

{¶ 3} After viewing the security camera footage, Deputy Slone arrested Ross and asked Iman to make a copy of the video. Deputy Slone testified that he did not receive a copy of the footage that day. Deputy Slone further testified that on at least three occasions, an employee from the Sheriff's Department called the store and requested a copy of the security footage from the assault. However, the Sheriff's Department never received or obtained a copy of the security footage recorded on the date of the assault.

{¶ 4} At his arraignment on July 21, 2011, Ross entered a plea of not guilty. On July 28, 2011, defense counsel for Ross filed a notice of appearance as well as a demand for discovery which specifically included a request that the State "preserve and provide any video/audio tapes." Ross filed a motion for a continuance on November 29, 2011, stating that the security footage of the assault had not been made available to him.

{¶ 5} On November 30, 2011, Ross filed a motion to dismiss alleging that the State and the police failed to preserve the security footage of the assault and turn it over to

him as part of his discovery demand. A hearing regarding Ross' motion to dismiss was held on January 3, 2012. On January 4, 2012, the trial court issued a decision overruling Ross' motion to dismiss.

{¶ 6} On the same date, Ross pled no contest to the assault charge. The trial court found him guilty and sentenced him to two years of probation, a fine of $350.00, and suspended jail time. The trial court stayed imposition of the sentence pending the outcome of the appeal.

{¶ 7} It is from this judgment that Ross now appeals.

{¶ 8} Ross' sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO DISMISS."

{¶ 10} In his sole assignment, Ross contends that the trial court erred when it overruled his motion to dismiss. Specifically, Ross argues that the State violated his right to due process under the Fourteenth Amendment when it failed to preserve and turn over the security footage of the assault recorded by the owners of the convenience store. Ross asserts that the security footage was materially exculpatory evidence which would have established that he did not assault Kamal Odeh.

{¶ 11} The state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under the Fourteenth Amendment to the United States Constitution. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. Such evidence is deemed materially exculpatory if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different." A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *State v. Grigley*, 2d Dist. Montgomery No. 21632, 2007-Ohio-3159, citing *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234 (6th Dist.).

{¶ 12} In contrast, evidence is not materially exculpatory if it is merely potentially useful. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. The term "bad faith" generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. Id.

{¶ 13} In *Grigley*, the videotape requested by the defense from the State which allegedly contained materially exculpatory evidence was made by a "private entity having no connection with the police department or the prosecutor." We also noted that the tape was as readily available to the defense as it was the State. Similar to the videotape at issue in *Grigley*, the security footage in the instant case was recorded by the owner of the convenience store, a private entity. It is undisputed that the convenience store has no connection to the Sheriff's Department nor the State.

{¶ 14} Significantly, Deputy Slone testified that although he requested a copy of the security footage from the employees of the convenience store on several different occasions, one was never provided. The record establishes that neither the Sheriff's Department nor

the State ever possessed a copy of the security footage.

{¶ 15}  We also noted that defense counsel in *Grigley* was aware of the possible existence of a videotape containing materially exculpatory evidence less than ten days after the defendant's arrest.   In the instant case, the record establishes that Ross' defense counsel was aware of the possible existence of the videotape of the security footage from the convenience store when he filed his demand for discovery just seven days after Ross was arrested.   Ross' counsel knew about the existence of a videotape just days after the assault and could have requested a copy from the convenience store.   This was not an item of evidence produced, maintained, or in any way controlled by the State or the Sheriff's Department. *Grigley*, 2007-Ohio-3159.   Accordingly, the trial court did not err in overruling Ross' motion to dismiss the case based on the State's alleged failure to disclose or preserve exculpatory evidence.

{¶ 16}  Ross' sole assignment of error is overruled.

{¶ 17}  Ross' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

GRADY, P.J., concurring:

{¶ 18}   The issue which Defendant-Appellant's first assignment of error presents is whether the trial court abused its discretion when it overruled Defendant's motion to dismiss the charge of assault filed against him as a sanction for the State's failure to provide discovery of a video recording of the events the charge involved.

{¶ 19} An "[a]buse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 167, 553 N.E.2d 597 (1990).

{¶ 20} Crim. R. 16(L)(1) provides:

The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, <u>or it may make such other order as it deems just under the circumstances</u>. (Emphasis supplied.)

{¶ 21} The choice of sanction rests within the discretion of the trial court, and appellate courts will reverse only if there is an abuse of that discretion and a showing of prejudice. In exercising its discretion, the trial court should consider three factors: (1) the reason for the violation, including

whether the prosecution acted in bad faith, (2) the extent of prejudice to the defendant, and (3) the feasibility of curing the prejudice with a continuance. Baldwin's Ohio Criminal Law, § 49:23, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), and *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987).

**{¶ 22}** Upon the defendant's request, the prosecutor is required by Crim.R. 16(B) to provide copies to or allow counsel for the defendant to copy items related to the indictment or complaint "which are material to the preparation of a defense * * * (that are) within the possession of, or reasonably available to the state, subject to the provisions of this rule." Crim.R. 16 (B)(3) requires discovery of photos and tangible objects.

**{¶ 23}** Appellee, the State of Ohio, argues that "[a] police officer has no obligation to produce a videotape that was not in his possession and never has been in the possession of the police department." The State cites *State v. Combs*, 2d Dist. Greene No. 2006-CA-38, 2006-Ohio-7088 as support for that proposition.

**{¶ 24}** The State's reliance on *Combs* is misplaced. Unlike the present case, there was no Crim.R. 16 discovery demand by the defendant in *Combs*. Rather, the defendant caused a Crim.R. 17(C) subpoena *duces tecum* for several items, including any video recording of his arrest, to be served on the arresting officer. After the officer failed to produce a video, Defendant moved to dismiss the charge against him. The trial court overruled the motion. We affirmed, noting that there was no evidence that a video recording was ever made, or if one was made that the officer ever had personal possession of the video that the subpoena *duces tecum* required him to produce.

{¶ 25}  We cited and relied on *Combs* in *State v. Grigley*, 2d Dist. Montgomery No. 21632, 2007-Ohio-3159, a case in which a discovery demand was made and the State failed to provide discovery of a video recording the defendant requested.  There was evidence that a video recording had been made of the defendant's arrest by a video system owned and maintained by the bar where the defendant was arrested.  The State failed to obtain a copy of the video before it was destroyed.  The defendant moved to dismiss the charge against him.  The court overruled the motion.  We affirmed, finding that the video had been produced by a private entity having no connection with the police and that "the State had no duty to acquire or to preserve evidence that was never in its possession."  *Id*., ¶ 2.  We also noted that counsel for the defendant was aware of the video and could have sought to obtain it.

{¶ 26}  Our reliance on *Combs* was misplaced, to the extent that we applied our holding in that case to the discovery issue in *Grigley*.  As noted above, *Combs* involved a subpoena *duces tecum*, not discovery.  Furthermore, Crim.R. 16(B) provides that, in addition to material "within the possession" of the state, the prosecutor has a duty to disclose any material "related to the particular complaint" and "material to the preparation of a defense" that is "reasonably available to the state."  That alternative does not necessarily exclude materials from the state's duty to provide discovery of them because they were produced by or are in the possession of a private entity having no connection with the police.  Neither does the rule relieve the prosecutor of his obligations under the rule because materials are otherwise directly available to the defendant.

{¶ 27}  In requiring the state to provide discovery of materials that are reasonably

available to the state, Crim.R. 16(B) assumes that the state will procure possession of all materials of which the state knows that are relevant to the object of its criminal investigation. That assumption flows from a due diligence obligation. By allowing for discovery of such materials, Crim.R. 16(B) also creates a due process right in the defendant to have access to them when they are potentially useful to the defendant in preparing a defense. The state's failure to preserve such evidence in response to a discovery demand violates the defendant's due process rights if the police or prosecution acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

{¶ 28}   The events that underlie  the charge of assault against Defendant took place at a convenience store. Deputy Slone testified that he reviewed the portion of the intermittent "stop action" video depicting those events. He testified that they showed Defendant in a dispute of some sort with a store clerk. The Defendant then turned to leave the store, walking past the store owner, Kamal Odeh, the victim of the alleged assault. Deputy Slone continued:

> Walking past Mr. Odeh, walking towards the door.   Then he stops, Mr. Ross. He turns, appears to get into a shouting match with Mr. Odeh, and it appears that they're both sitting there going back and forth. And then you see Mr. Ross bring his hand up, bring his hand forward. As he's bringing his hand forward, you see Kamal jumps back, then takes that stick and swings it up in a defensive manner and comes down. You then see Mr. Ross proceed to take another swing at Mr. Odeh, in which Mr. Odeh then jumps back, raising the stick up in a defensive position. And then you see Mr. Ross exit the

store.  (Tr. 27).

{¶ 29}  Deputy Slone further testified that Mr. Odeh had marks on his chest where Defendant allegedly struck him, and that Mr. Odeh was taken by squad to a hospital for symptoms of a possible heart attack.

{¶ 30}  As described by Deputy Slone, the video offers little if any benefit to Defendant, except for the absence of any conduct on his part that  the "stop action" format might not show.  Even so, being a depiction of the crime of assault alleged, the video was "material to the preparation of a defense" to that crime for purposes of Crim.R. 16(B). Because the video had been destroyed, a continuance would offer the Defendant no compensatory benefit.  The issue, then, is whether the officer acted in bad faith by failing to procure the video or a copy of it.

{¶ 31}  Deputy Slone testified that Mr. Odeh's daughter offered to make a copy of the video Deputy Slone had reviewed, and that he and another officer made three requests for a copy, but none was provided before the video was destroyed.  Deputy Slone conceded that had  the crime concerned been more serious, for example a bank robbery, officers would have found a way to get a copy.  (Tr. 12).

{¶ 32}  The term 'bad faith' generally implies something more than bad judgment or negligence.  'It imparts a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking in the nature of fraud.'"  *State v. Durnwald*, 163  Ohio App. 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 30 (6th Dist.) (internal citation omitted).  On this record, none of those standards are satisfied. The trial court could  reasonably conclude that Deputy Slone's failure to act more diligently

to preserve the video or obtain a copy of it was mere negligence, at most, not a failure constituting bad faith. The trial court did not abuse its discretion when it overruled Defendant's motion to dismiss as a sanction for the State's failure to preserve the video and to provide discovery of it.

. . . . . . . . . .

Copies mailed to:

Ronald Lewis
Jay A. Adams
Hon. Michael K. Murry