[Cite as *Cleveland v. Townsend*, 2013-Ohio-5421.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99256

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## NATASHA TOWNSEND

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2012 CRB 018014

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** December 12, 2013

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
City of Cleveland Law Director
Victor R. Perez
Chief City Prosecutor

Bidisha Bagchi
Assistant City Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Natasha Townsend, appeals her convictions in the Cleveland Municipal Court. For the following reasons, we affirm.

**Procedural History and Substantive Facts**

{¶2} On June 5, 2012, a complaint was filed against Townsend in the Cleveland Municipal Court, charging her with failure to comply in violation of R.C. 2921.331 and resisting arrest in violation of Cleveland Codified Ordinances 615.08. Townsend pleaded not guilty to the charges, and the case proceeded to a jury trial.

{¶3} The facts presented at trial were as follows: On June 2, 2012, Cleveland police officer Robert Zubek was directing traffic at Cleveland Hopkins International Airport on the lower baggage claim roadway when he encountered Townsend driving a minivan. Townsend arrived at the airport to pick up her sister. Officer Zubek and Townsend spoke. Officer Zubek testified that he informed Townsend that she could not leave her vehicle unattended outside the baggage claim area and that she needed to park in the parking garage if she intended to go inside the airport. Pursuant to Transportation Security Administration ("TSA") safety regulations and mandates, no vehicles are permitted to be stopped or unattended near the terminal. Signs informing drivers of this mandate were posted throughout the area. Townsend testified that Officer Zubek instructed her to park outside the baggage claim area in contravention of the mandate.

{¶4} The baggage claim area was congested during this time, and Officer Zubek continued to direct traffic. Shortly after speaking with Townsend, Zubek observed a

minivan parked and unattended at the curb. No one nearby claimed the vehicle. Officer Zubek issued a parking ticket and proceeded to have the owner of the vehicle paged by airport personnel. Officer Zubek waited ten minutes before beginning the procedure to tow the vehicle. He pulled his zone car up next to the minivan and turned on the overhead lights. At that point, a female exited the airport yelling, "What are you doing to my van?" Officer Zubek recognized the female as Townsend, from their earlier conversation.

{¶5} Officer Zubek informed Townsend that he intended to cite her for failure to comply with his earlier parking instructions. To this end, Officer Zubek demanded her driver's license. Townsend refused to provide her license, and she entered the minivan, despite Officer Zubek informing her that he would arrest her if she refused his request. After three requests for Townsend's license, Officer Zubek called for backup. Townsend attempted to close the minivan door, but Zubek physically stopped her. As backup arrived on the scene, Officer Zubek informed Townsend that she was under arrest, and he ordered her to step out of the vehicle. Townsend refused and had to be forcefully removed. In the process of effecting the arrest, Townsend smacked Officer Zubek's arm away and shoved him back against his car. Townsend attempted to flee but was taken to the ground by Officer Zubek and another officer. Townsend struggled with the officers, preventing them from handcuffing her on the ground. Only upon threat of being subdued by a taser did Townsend submit to arrest.

**{¶6}** At the conclusion of trial, the jury found Townsend guilty of both charges. At sentencing, the trial court imposed a fine of $1,000 and a jail term of 180 days for failure to comply and a fine of $750 and a jail term of 90 days for resisting arrest. The trial court suspended both jail terms and all but $250.00 of the fines. Townsend timely appealed, presenting three assignments of error.

## Assignments of Error

I.   The trial court erred, in derogation of defendant's right to due process of law, as guaranteed by the 14th Amendment to the Constitution of the United States, in denying defendant's motion to dismiss for vindictive prosecution.

II.   The trial court committed plain error in instructing the jury on the charge of failure to comply, in that the jury was permitted to base its conviction on the failure of defendant to comply with one of two acts, one of which she had been acquitted of, in violation of defendant's right against double jeopardy, as guaranteed by the 5th Amendment to the Constitution of the United States.

III.   The trial court erred, in derogation of Defendant's right to due process of law, as guaranteed by the 14th Amendment to the Constitution of the United States, in denying Defendant's motion to dismiss for failure to preserve evidence.

## Vindictive Prosecution

**{¶7}** In her first assignment of error, Townsend argues that the trial court erred in denying her motion to dismiss for vindictive prosecution. The record does not reflect that Townsend filed such a motion. On June 19, 2012, Townsend filed a motion to dismiss based on double jeopardy and collateral estoppel, which was denied. On October 2, 2012, Townsend filed a second motion to dismiss, asserting that the city had destroyed "materially exculpatory" evidence. This motion was also denied. Townsend failed to raise the issue of vindictive prosecution before the trial court, and she now asks this court to find that the trial court erred by not, sua sponte, raising this argument for her and dismissing the case. We decline to do so.

**{¶8}** Defects in the institution of the prosecution and/or in the indictment must be raised before trial or they are waived. Crim.R. 12(C), (H). "As a general rule, an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred." *State v. Petkovic*, 8th Dist. Cuyahoga No. 97548, 2012-Ohio-4050, ¶ 54, quoting *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

**{¶9}** Townsend's argument under this assignment of error is based upon a separate Cleveland Municipal Court case that stemmed from the same incident of June 2, 2012, wherein she was charged with failure to display her driver's license, in violation of Cleveland Codified Ordinances 435.06. Townsend pleaded no contest to the charge, but

upon presenting her driver's license at arraignment, the court found her not guilty and dismissed that case. The complaint in the present case was filed the same day.

{¶10} Having failed to either file a pretrial motion to dismiss on the grounds of vindictive prosecution by the city for Townsend's successful defense of the display of license refusal charge, or otherwise raise that issue in the trial court, Townsend has not preserved the issue for appellate review, and we will not consider that issue for the first time on direct appeal. *State v. Cline*, 2d Dist. Champaign No. 07CA02, 2008-Ohio-1866, ¶ 18.

{¶11} Even were we to assume for the sake of argument that Townsend had properly raised this issue before the trial court, we note that the timeline does not suggest vindictiveness on the part of the city. Townsend's parking incident occurred on Saturday June 2, 2012, at which point she was not only issued a ticket for her refusal to produce her driver's license pursuant to Cleveland Codified Ordinances 435.06, but she was arrested in connection with the charges in this case. A mere three days later, on Tuesday June 5, 2012, Townsend was found not guilty of the display of license charge and she was charged with the crimes in this case. We cannot find a vindictive purpose in this series of events. Townsend's argument would impose a presumption of vindictiveness on the prosecutor if he was unable to have his charges prepared on Sunday and filed on Monday.[1]

---

[1]Although the city presents an argument on appeal attempting to rebut any presumption of vindictiveness, we note that such evidence is not part of the record before us due to Townsend's failure to raise this issue at the trial court. This is an instructive example of the necessity of complying with Crim.R. 12(C), (H) and the holding in *Cline*.

**{¶12}** Townsend's first assignment of error is without merit.

### Jury Instructions on Failure to Comply

**{¶13}** As discussed above, in addition to the charges in the present case, Townsend was charged with failure to display her license in the separate case to which we refer in the first assignment of error. Although she pleaded no contest in that case, she was found not guilty and the case was dismissed. Townsend now argues that the trial court erred by not including a jury instruction clarifying that she could not be found guilty of the failure to comply charge based upon her refusal to provide Officer Zubek with her driver's license.

**{¶14}** Because Townsend did not object to the jury instructions, we review this claim for plain error. *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 32; Crim.R. 30(A). Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.*

**{¶15}** Townsend bases her argument on this court's decision in *State v. Jackson*, 8th Dist. Cuyahoga No. 95920, 2011-Ohio-5920. The defendant in *Jackson* was charged with felonious assault, domestic violence, and endangering children. Jackson argued that

his due process rights were violated because the indictment failed to specify which of four instances of alleged abuse of Jackson's son (punching him, beating him with a belt, burning him with a fork, and pushing him out of the car) constituted the bases of the charges.

{¶16} This court noted that pursuant to Crim.R. 31(A), a criminal defendant is entitled to a unanimous jury verdict. *Id*. at ¶ 21. "If two distinct offenses are presented in a single charge, however, unanimity may be compromised. That is, if two offenses are joined in a single count, while the jury may agree that the defendant is guilty of that count, they may have not unanimously decided which set of facts resulted in the offense." *Id*. at ¶ 21, citing *State v. Ward*, 9th Dist. Lorain No. 90CA009720, 2011-Ohio-518, ¶ 5.

{¶17} In *Jackson*, we noted that it was impossible to determine if the jury convicted the defendant of child endangering based on punching his son in the stomach or burning him, or if some of the jurors convicted based upon one incident and other jurors convicted him based on another. *Id*. at ¶ 45. We concluded that each member of the jury may not have based his or her decision on the same facts, thereby denying Jackson his right to a unanimous verdict. We also noted that the indictment failed to protect Jackson against double jeopardy in that it did not apprise Jackson of what occurrences formed the basis of the charges he faced, and the jury had no idea which charge referred to which act. *Id*. at ¶ 46-47.

{¶18} The present case differs from *Jackson* in an important respect. The failure to comply charge in the complaint against Townsend specifically contains a "to wit"

clause, alleging that Townsend failed to comply in that she "left van unattended and refused to move van 30 minutes at airport." In contrast, Townsend's failure to provide her license is not charged in the complaint. Furthermore, the testimony elicited at trial pertained to Officer Zubek's authority to direct and regulate traffic. There was no testimony offered regarding his lawful authority to demand Townsend's driver's license. Consistent with this, the trial court's jury instructions on the failure to comply charge included an instruction regarding the officer's authority to direct and regulate traffic. There was no instruction provided regarding the officer's lawful authority to demand Townsend's license. Finally, the jury verdict indicates that the jury found Townsend guilty of failure to comply "as charged in the complaint." In light of these facts, we cannot say the trial court's jury instructions resulted in plain error.

{¶19} Townsend's second assignment of error is overruled.

**Failure to Preserve Evidence**

{¶20} On July 10, 2012, Townsend filed a motion to preserve evidence, requesting the city preserve "any and all videotapes, audiotapes, DVD that may not have been used in charging the defendant." Prior to trial, Townsend moved the court to dismiss the case, arguing that the city had destroyed materially exculpatory evidence, and in the alternative, that the city had, in bad faith, destroyed potentially useful evidence. Townsend's argument concerns video surveillance evidence made by Cleveland Hopkins Airport that would have recorded Townsend's interactions with Officer Zubek on June 2, 2012.

{¶21} The suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 254, 2007-Ohio-5239, 878 N.E.2d 1, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.* at 485.

{¶22} This court has previously held that the possibility that evidentiary material could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality. *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 12, citing *Arizona v. Youngblood*, 488 U.S. 51, 56, 109 S. Ct. 333, 102 L.Ed.2d 281 (1988). "A clear distinction is drawn by *Youngblood* between materially exculpatory evidence and potentially useful evidence. If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *Geeslin* at 254. Therefore, when evidence is only potentially useful, its destruction does not violate due

process unless the police acted in bad faith when destroying the evidence. *State v. Miller*, 161 Ohio App.3d 145, 2005-Ohio-2516, 829 N.E.2d 751 (2d Dist.).

{¶23} The term "bad faith" generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another. *Durham* at ¶ 13, citing *State v. Smith*, 2d Dist. Montgomery No. 20247, 2005-Ohio-1374, ¶ 7.

{¶24} In *Durham*, this court examined a situation where an alleged criminal incident was caught on videotape but no one viewed the videotape before it was erased. We noted that the videotape evidence might have been inculpatory or exculpatory or a combination of the two. We, therefore, held that the defendant was unable to demonstrate that the evidence was materially exculpatory, and we treated the erased video as only potentially useful.

{¶25} The holding in *Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, controls in this case as well. None of the parties viewed the video evidence prior to Cleveland Hopkins Airport erasing or recording over the incident. Furthermore, Officer Zubek testified that the cameras outside the airport are not fixed on one location and, as such, may not have recorded the incident at all. Pursuant to *Durham*, we cannot treat the missing video as materially exculpatory.

{¶26} Because the video does not qualify as materially exculpatory evidence, our inquiry turns to whether it would be potentially useful and whether the video was

destroyed in bad faith. Although there is no question in this instance that the video would have been potentially useful to the extent that it might have recorded all or at least a portion of Townsend's encounter with Officer Zubek, there is no evidence in the present case that the video was destroyed in bad faith. Officer Zubek testified that Cleveland Hopkins Airport retains video surveillance for 17 days before the video is either deleted through their system or copied over digitally. Townsend did not file her motion to preserve evidence until 38 days after the incident, well after the airport destroyed the video. At a hearing on this motion, the city prosecutor indicated that he had requested the video from Cleveland Hopkins Airport and that the airport reported that no video was available.

{¶27} Although we find it troubling that neither the police nor the city bothered to make an earlier effort to inquire into the existence of potential video evidence prior to Townsend filing a motion to preserve evidence, we cannot say the facts of this case demonstrate a dishonest purpose, moral obliquity, or conscious wrongdoing on the part of the city such that bad faith is established. *See, e.g., State v. Gatliff*, 12th Dist. Clermont No. CA2012-06-045, 2013-Ohio-2862, superceded on other grounds (finding no bad faith where the state failed to preserve potentially useful video evidence that was destroyed by a restaurant in the ordinary course of business).

{¶28} Townsend's third assignment of error is overruled.

{¶29} The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
EILEEN A. GALLAGHER, P.J., DISSENTS (SEE ATTACHED DISSENTING OPINION).

EILEEN A. GALLAGHER, P.J., DISSENTING:

**{¶30}** I respectfully dissent from my learned colleagues.   Because I find that the third assignment of error is dispositive of this case, it, alone, will be addressed.

**{¶31}** Appellant's third assignment of error states:

The trial court erred, in derogation of Defendant's right to due process of law, as guaranteed by the 14th Amendment to the Constitution of the United States, in denying Defendant's motion to dismiss for failure to preserve evidence.

**{¶32}** On July 10, 2012, appellant filed a motion to preserve evidence requesting the city preserve "any and all videotapes, audiotapes, DVDs that may not have been used in charging the defendant."   Prior to trial, appellant moved the court to dismiss the case, arguing that the city had destroyed materially exculpatory evidence and, in the alternative, that the city had, in bad faith, destroyed potentially useful evidence.   Appellant's argument concerns alleged video surveillance evidence from the Cleveland Hopkins International Airport that potentially could have recorded appellant's interactions with Officer Zubek on June 2, 2012.

{¶33} The suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 254, 2007-Ohio-5239, 878 N.E.2d 1, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id*. at 485.

{¶34} Incredulously, it is the position of the city, and its witness testified, that any cameras at the airport are not stationary, *may not have recorded this incident* and that such recordings are retained for only 17 days.

{¶35} That position, and testimony, is beyond the pale. To suggest that the Cleveland Hopkins International Airport, the Department of Homeland Security or the Transportation Security Administration do not have security cameras that cover every square inch of airport property, its ingress and egress and further, that the video recording generated by these cameras is destroyed or taped over every 17 days is preposterous, particularly when there has been an incident, injury and subsequent arrest.

**{¶36}** Officer Zubek, who is somehow the city's expert on these matters, failed to secure and preserve recorded video evidence even though he was going to file criminal charges against appellant.

**{¶37}** In this case, the testimony of Officer Zubek and appellant are dichotomous and the surveillance video would have been the only unbiased evidence as to each of the interactions between the two. Therefore, a video recording of this incident was vital. However, we can never determine if the evidence was exculpatory because it allegedly had not been retained by the city.

**{¶38}** This court has previously held that the possibility that evidentiary material could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality. *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 12, citing *Arizona v. Youngblood*, 488 U.S. 51, 56, 109 S.Ct. 333, 102 L.Ed. 2d 281 (1988).

> A clear distinction is drawn by *Youngblood* between materially exculpatory evidence and potentially useful evidence. If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation.

*Geeslin*, 116 Ohio St.3d at 254, 2007-Ohio-5239, 878 N.E.2d 1.

**{¶39}** Therefore, when evidence is only potentially useful, its destruction does not violate due process unless the police acted in bad faith when destroying the evidence. *State v. Miller*, 161 Ohio App.3d 145, 2005-Ohio-2516, 829 N.E.2d 751 (2d Dist.).

**{¶40}** The term "bad faith" generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another. *Durham* at ¶ 13, citing *State v. Smith*, 2d Dist. Montgomery No. 20247, 2005-Ohio-1374, at ¶ 7.

**{¶41}** In *Durham,* 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, this court examined a situation where an alleged criminal incident was caught on videotape but no one viewed the videotape before it was erased. We noted that the videotape evidence might have been inculpatory or exculpatory or a combination of the two. Therefore, we held that the defendant was unable to demonstrate that the evidence was materially exculpatory and treated the erased video as only potentially useful.

**{¶42}** The holding in *Durham* controls in this case as well. Allegedly, none of the parties viewed the video evidence prior to Cleveland Hopkins Airport erasing or recording over the incident. Pursuant to *Durham,* we cannot treat the missing video as materially exculpatory.

**{¶43}** Because the video does not qualify as materially exculpatory evidence, our inquiry turns to whether it would be potentially useful and whether the video was destroyed in bad faith. There is no dispute that the video qualifies as potentially useful because it could have provided the only objective view of the events in this case. I further find that the video was destroyed in bad faith.

**{¶44}** "In requiring the state to provide discovery of materials that are reasonably available to the state, Crim.R. 16(B) assumes that the state will procure possession of all materials of which the state knows that are relevant to the object of its criminal investigation." *State v. Ross*, 2d Dist. Greene No. 2012 CA 16, 2012-Ohio-4977, ¶ 27. That assumption flows from a due diligence obligation. *Id.* By allowing for discovery of such materials, Crim.R. 16(B) also creates a due process right in the defendant to have access to them when they are potentially useful to the defendant in preparing a defense. *Id.*

**{¶45}** In the present case, the arresting officer testified that he was aware of the surveillance cameras at the airport and that he knew the exact number of days that the airport would retain video evidence prior to its destruction. Despite this knowledge, the law enforcement officers involved in the case willfully ignored an opportunity to secure the best available evidence of the alleged crime. The city cannot possibly claim ignorance of surveillance video evidence of an incident in the middle of the roadway outside of Cleveland Hopkins Airport's baggage claim. Under these circumstances I would hold that the video evidence was destroyed in bad faith and appellant's due process rights were violated when the city willfully chose not to secure the video evidence prior to its destruction.