[Cite as *State v. Johnston*, 2015-Ohio-450.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                    :
                                 :
    *Plaintiff-Appellee*        :        Appellate Case No. 26016
                                 :
v.                               :        Trial Court Case No. 2012-CR-2785
                                 :
JASON E. JOHNSTON, JR.           :        (Criminal Appeal from
                                 :        Common Pleas Court)
    *Defendant-Appellant*       :
                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of February, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 West Second Street, 400 Liberty Tower, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Jason E. Johnston, Jr., appeals from his conviction in the Montgomery County Court of Common Pleas after pleading no contest to rape, gross sexual imposition, sexual battery, felonious assault, and multiple counts of kidnapping and aggravated menacing. Johnston claims the trial court erred and abused its discretion in precluding his expert witness from testifying at trial. Additionally, Johnston contends his no contest plea was not knowingly and voluntarily made. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On September 21, 2012, the Montgomery County Grand Jury returned a twelve-count indictment against Johnston charging him with two counts of kidnapping in violation of R.C. 2905.01(A)(2); three counts of kidnapping in violation of R.C. 2905.01(A)(3); one count of kidnapping in violation of R.C. 2905.01(A)(4), which included a sexual motivation specification; one count of rape in violation of R.C. 2907.02(A)(2); one count of gross sexual imposition in violation of R.C. 2907.05(A)(1); two counts of aggravated menacing in violation of R.C. 2903.21(A); one count of sexual battery in violation of R.C. 2907.03(A)(5); and one count of felonious assault in violation of R.C. 2903.11(A)(2). All counts, except for the two counts of aggravated menacing, included a three-year firearm specification.

{¶ 3} Following his indictment, on October 18, 2012, Johnston filed a written plea

of not guilty by reason of insanity, moving for an examination to determine his competency to stand trial and his mental state at the time of the alleged offenses. The trial court ordered the requested examinations to be completed and reported on by the Forensic Psychiatry Center for Western Ohio. After examining Johnston, the Center's psychologist submitted a written report opining that within a reasonable degree of psychological certainty, Johnston was competent to stand trial and was not legally insane at the time of the alleged offenses.

{¶ 4} In light of the foregoing report, Johnston requested, and the trial court permitted, a second evaluation by psychologist Dr. Richard Bromberg. Dr. Bromberg examined Johnston and his report contradicted the first evaluation. Dr. Bromberg's report stated that within a reasonable degree of psychological certainty, Johnston was legally insane at the time of the alleged offenses due to an acute psychological condition of Amphetamine-Induced Psychotic Disorder and a chronic psychological condition of Mood Disorder Not Otherwise Specified.

{¶ 5} The parties partially stipulated to the contents of the first report only with respect to the issue of Johnston's competency. The trial court subsequently found Johnston competent to stand trial. The State then filed a combined motion for a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 and an order in limine to: (1) determine whether Dr. Bromberg's expert opinion on Johnston's sanity was admissible under *Daubert*; and (2) preclude any testimony or evidence concerning Johnston's alleged psychiatric or psychological conditions that are related to his voluntary ingestion of drugs.

{¶ 6} On September 30, 2013, the trial court held a hearing on the combined

motion. Dr. Bromberg appeared at the hearing and testified regarding his expert opinion. Specifically, Dr. Bromberg testified that he had diagnosed Johnston with Amphetamine-Induced Psychotic Disorder with onset during intoxication. Dr. Bromberg also testified that Johnston reported taking an overdose of Ritalin on the night of the offenses, ingesting 10 to 12 times the prescribed amount as a suicide attempt. In addition, Dr. Bromberg testified that Johnston's wife had reported that Johnston ingested some of her prescription medication, which included Vistaril, Seroquel, and Propranolol. Dr. Bromberg also testified that it was reported Johnston consumed alcohol.

{¶ 7} Continuing, Dr. Bromberg testified that Johnston's initial overdose of Ritalin was voluntary, but that his state of mind thereafter changed in a manner making his continued intoxication involuntary. Dr. Bromberg also testified that if Johnston had not ingested the aforementioned substances, he would not have diagnosed him with Amphetamine-Induced Psychotic Disorder, and without that diagnosis, he would not have found Johnston not guilty by reason of insanity. Dr. Bromberg unequivocally testified that Johnston would not have been legally insane had he not taken the substances.

{¶ 8} After the hearing, the trial court granted the State's motion in limine and issued an order excluding Dr. Bromberg's testimony on grounds that it was improper under R.C. 2901.21(C), a statute which precludes using voluntary intoxication as a defense. No ruling was made under *Daubert* as to the scientific reliability of Dr. Bromberg's expert opinion.

{¶ 9} Following the exclusion of his expert witness, Johnston pled no contest to the charges in the indictment. At the plea hearing, defense counsel indicated on the record that Johnston entered his no contest plea because the trial court's evidentiary ruling

destroyed his sole defense and he wanted the opportunity to appeal the ruling. The trial court accepted counsel's statement without any comment. Thereafter, the trial court sentenced Johnston to an aggregate 10-year prison term.

{¶ 10} Johnston now appeals from his conviction, raising three assignments of error for review.

### First and Second Assignments of Error

{¶ 11} For purposes of convenience, we will address Johnston's First and Second Assignments of Error together. They are as follows:

I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DISALLOWING TESTIMONY FROM DR. BROMBERG ON THE ISSUE OF INSANITY[.]

II. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DISALLOWING TESTIMONY FROM DR. BROMBERG BECAUSE HIS OPINION COULD HAVE ESTABLISHED A DEFENSE OF INVOLUNTARY INTOXICATION[.]

{¶ 12} Under the foregoing assignments of error, Johnston contends the trial court erred and abused its discretion in granting the State's motion in limine excluding the testimony of his expert witness, Dr. Bromberg. Specifically, Johnston claims that Dr. Bromberg's opinions should have been permitted on the issues of insanity and involuntary intoxication. In response, the State contends that the trial court's ruling on the motion in limine is a preliminary, interlocutory order that is not reviewable on appeal. The State also contends that even if the ruling is reviewable, it was not an abuse of

discretion.

{¶ 13} A trial court's ruling on a motion in limine is a " 'tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context.' " *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986), quoting Palmer, *Ohio Rules of Evidence Rules Manual*, at 446 (1984). " 'In virtually all circumstances finality does not attach when the motion is granted.' " *Id.* at 202. As a result, " '[a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial.' " *Id.* at 203, quoting *State v. Leslie*, 14 Ohio App.3d 343, 344, 471 N.E.2d 503 (2d Dist.1984). (Other citation omitted.)

{¶ 14} "[R]enewing a motion and/or objection in the context of when [the evidence] is offered at trial is important because 'the trial court is certainly at liberty * * * "to consider the admissibility of the disputed evidence in its actual context." ' " *State v. Echard*, 9th Dist. Summit No. 24643, 2009-Ohio-6616, ¶ 4, quoting *Grubb* at 202 and *State v. White*, 6 Ohio App.3d 1, 4, 451 N.E.2d 533 (8th Dist.1982). The "concept of preserving the issue for appeal applies, however, only if the motion in limine is of a type that requests a preliminary ruling prior to the issue being presented in context during trial." (Citation omitted.) *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, 942 N.E.2d 409, ¶ 7 (9th Dist.).

{¶ 15} "Not all motions in limine are aimed at evidence that may later become relevant and admissible if and when a proper foundation has been laid at trial. Some evidence cannot ever become relevant and admissible." *Id. at* ¶ 8. For example, in *Carter*, the court referenced a statutory scheme that prevents privileged mediation

communications from being discoverable or admissible as evidence unless certain criteria are met, and it noted that "[w]hether evidence is privileged under the statute is not dependent on a foundation being laid at trial. Therefore, the ruling on this type of motion in limine [which either excludes or permits the privileged mediation communication as evidence at trial] is not preliminary. It is definitive." *Id.*

{¶ 16} In that regard, a motion in limine can serve as the functional equivalent of a motion to suppress, which determines the admissibility of evidence with finality. *See Echard* at ¶ 20 ("definitive" or "exclusionary" motions in limine determine the inadmissibility of a particular matter and if the motion is granted, it not only prevents evidence from being introduced, it also prevents opposing counsel and opposing witnesses from even mentioning the excluded evidence during trial—"it is the functional equivalent of a motion to suppress"); *State v. French*, 72 Ohio St.3d 446, 450, 650 N.E.2d 887 (1995) (motions in limine "may also be used as the *functional equivalent* of a motion to suppress evidence that is either not competent or improper due to some unusual circumstance not rising to the level of a constitutional violation"); *Riverside Methodist Hosp. Assn. of Ohio v. Guthrie*, 3 Ohio App.3d 308, 310, 444 N.E.2d 1358 (10th Dist.1982) (a motion in limine "can serve the same purpose as a motion to suppress evidence where the evidence either is not competent or is improper"); *State v. Greaves*, 2012-Ohio-1989, 971 N.E.2d 987, ¶ 8 (6th Dist.) ("a successful motion in limine frequently effectuates the pre-trial suppression of disputed evidence").

{¶ 17} "The essential difference between a Crim.R. 12[(C)] motion [e.g., a pretrial motion to suppress] and a motion in limine is that the former is capable of resolution without a full trial, while the latter requires consideration of the issue in the context of the

other evidence." (Emphasis deleted.) *State v. Hall*, 57 Ohio App.3d 144, 146, 567 N.E.2d 305 (8th Dist. 1989). "The determination of whether a motion is a 'motion to suppress' or a 'motion in limine' does not depend on what it is labeled. It depends on the type of relief it seeks to obtain." (Emphasis deleted.) *State v. Davidson*, 17 Ohio St.3d 132, 135, 477 N.E.2d 1141 (1985).

{¶ 18} In *Hall*, a defendant who was charged with kidnapping and aggravated robbery filed a motion in limine seeking to prevent the State from introducing the testimony of two witnesses whom the defendant had previously raped and robbed as a juvenile. *Hall* at 145. The trial court overruled the motion after an evidentiary hearing. *Id*. Thereafter, instead of going to trial, the defendant entered a no contest plea and later appealed the evidentiary ruling. *Id*.

{¶ 19} Initially, the appellate court in *Hall* determined whether the defendant properly preserved his claimed errors for appeal given that a ruling on a motion in limine is interlocutory and generally not reviewable unless the defendant objects at trial. *Id*. at 145-146. Despite the defendant not going to trial and despite the defendant's motion being labeled in limine, the appellate court determined that the defendant's challenge to the evidentiary ruling was preserved for appeal because it was actually a suppression ruling. *Id*. at 146. The court deemed it a suppression ruling because the evidentiary issue to be reviewed was fully developed at the evidentiary hearing and was capable of resolution without a full trial. *Id*.

{¶ 20} Specifically, *Hall,* 57 Ohio App.3d 144, 567 N.E.2d 305 held that:

The denial of a motion in limine does not preserve error for purposes of appeal, absent a proper objection at trial. However, where a motion in

limine is treated essentially as a motion to suppress, i.e., a hearing is held at which the testimony that is the subject of the motion is fully presented with cross-examination, any error in the trial court's ruling on the motion may be preserved for review, especially where the court informs the defendant that he may appeal the ruling should he plead no contest rather than guilty, and the defendant so pleads.

(Emphasis deleted.) *Id.* at paragraph one of the syllabus.

{¶ 21} In *State v. Ulis*, 65 Ohio St.3d 83, 600 N.E.2d 1040 (1992), the Supreme Court of Ohio applied *Hall* under a similar set of facts. In *Ulis*, the defendant filed a motion to suppress evidence of a psychologist's testimony and then pled no contest after the motion was denied. *Id.* at 83. On appeal, the appellate court held that the motion to suppress was actually a motion in limine, which produced a preliminary ruling that was not preserved for appellate review. *Id.* at 84. In relying on *Hall*, the Supreme Court reversed the appellate court's decision finding that:

[T]he trial court conducted a full-blown hearing where testimony was elicited upon the constitutional claims that were the subject of the motion, both parties were provided with cross-examination, and the parties stipulated that any error in the trial court's ruling on the motion would be preserved for review. Also, the record discloses that the trial court treated appellant's motion as a motion to suppress and approved of the stipulation negotiated by the parties in order to obtain appellant's plea of no contest.

*Id.* at 85-86.

{¶ 22} *Hall* establishes and *Ulis* indirectly confirms that a motion in limine is treated

as a motion to suppress when an evidentiary hearing is held on the motion at which testimony regarding the subject of the motion is fully presented with cross-examination. *Hall* at 146; *Ulis* at 86. It should also be considered whether the parties stipulated or the trial court advised the defendant at the plea hearing that he may appeal the ruling on the motion after entering a no contest plea. *Id.* In addition, these cases establish that a plea of no contest preserves the defendant's right to appeal from an adverse ruling on a motion in limine when it is the equivalent of a motion to suppress. *Id.*; *see also* Crim.R. 12(I).

{¶ 23} Based on the foregoing principles and case law, we conclude that the ruling on the State's motion in limine was the functional equivalent of a suppression ruling. The motion in limine in this case requested an order excluding evidence relating to the psychological conditions of Johnston that were related to his voluntary ingestion of drugs. The trial court's ruling on the motion was not akin to a preliminary, anticipatory ruling that needed to be finalized at trial. Rather, the trial court conclusively determined that Dr. Bromberg would not be allowed to testify at trial because his testimony was improper under R.C. 2901.21(C).

{¶ 24} This is not a situation where admissibility could have only been resolved in the context of other evidence. The trial court's decision would not have been affected by other evidence and is not dependent on a foundation being laid at trial. Like a suppression hearing, all the evidence and testimony necessary to make this decision was presented at the evidentiary hearing where Dr. Bromberg was fully questioned and cross-examined by the parties. As a result, the motion was assessed in its full evidentiary/testimonial context and a conclusive ruling was thereafter made.

{¶ 25} Moreover, during Johnston's plea hearing, the trial court indirectly indicated that Johnston would be able to appeal the evidentiary ruling excluding Dr. Bromberg's testimony and the State did not disagree. This is reflected in the following discussion.

Defense Counsel: I want the record to show affirmatively that * * * due to the Court's decision on the Daubert issue and the Court having removed the only defense that we thought was available to us, that is the basis for the plea of no contest and the opportunity should the Defendant wish to attest the Court's decision in the court of appeals.

Court: All right.

Defense Counsel: I thank you very much for the opportunity to make that record.

Court: I appreciate that, Mr. O'Brien. Anything else from the State?

State: No, Your Honor.

Plea Trans. (Nov. 15, 2013), p. 63-64.

{¶ 26} For the foregoing reasons, we conclude that Johnston's challenge to the trial court's evidentiary ruling excluding Dr. Bromberg's testimony was preserved for appeal despite being labeled in limine, as it is the equivalent of a suppression ruling that was fully developed and ripe for determination.

{¶ 27} That being said, we now turn to whether the trial court erred in excluding Dr. Bromberg's expert testimony regarding Johnston's sanity. While appellate courts

generally review rulings on motions in limine for an abuse of discretion, this is improper if the ruling is the functional equivalent of a suppression ruling. *Greaves*, 2012-Ohio-1989, 971 N.E.2d 987 at ¶ 10. In that instance, appellate courts should use the standard of review for motions to suppress. *Id.* at ¶ 10-11.

**{¶ 28}** "Under the standard of review for a motion to suppress, an appellate court must accept as true the trial court's supported findings of fact and then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Leveck*, 2d Dist. Montgomery No. 23970, 2011-Ohio-1135, ¶ 8, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶ 29}** Here, the trial court found that Dr. Bromberg's opinion that Johnston was legally insane is based upon Johnston's claimed voluntary overdose of prescription medication and alcohol immediately before the offenses were committed. The record supports this finding; therefore, we shall apply it in conducting our inquiry into whether the trial court's resolution of this matter meets the applicable legal standard.

**{¶ 30}** As noted earlier, the trial court excluded Dr. Bromberg's testimony on grounds that it was improper under R.C. 2901.21(C), which provides that: "Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." In other words, voluntary intoxication is not a defense to any crime. (Citations omitted.) *State v. Arnold*, 2013-Ohio-5336, 2 N.E.3d 1009, ¶ 78 (2d Dist.).

**{¶ 31}** While Johnston recognizes this principle, he argues that he still should have been able to present Dr. Bromberg's testimony with regards to his insanity defense, which

he correctly argues is a separate legal concept from voluntary intoxication. *See State v. Smith*, 11th Dist. Trumbull No. 2005-T-0080, 2006-Ohio-4669, ¶ 17, citing R.C. 2901.01(A)(14). Nevertheless, a person is not guilty by reason of insanity only if the person proves by a preponderance of the evidence that at the time of the commission of the offense, the person did not know the wrongfulness of his acts *as the result of severe mental disease or defect. See* R.C. 2901.01(A)(14) and R.C. 2901.05(A). Here, Dr. Bromberg essentially testified that it was the voluntary overdose of medication that caused Johnston not to know the wrongfulness of his acts, not a mental disease or defect. This is reflected in the following testimony:

> State: First, would it be fair to say you diagnosed the Defendant with amphetamine-induced psychotic disorder with onset during intoxication in partial remission?
>
> Bromberg: Yes, sir.
>
> State: Okay. And would you agree with me, if the Defendant had not taken [the] medication, he would not have had the diagnosis; correct?
>
> Bromberg: That's correct, sir.
>
> State: In fact, without this diagnosis you wouldn't have found him NGRI, or not guilty by reason of insanity?
>
> Bromberg: I don't believe so. Although, there was traces of some psychosis in his psychological testing.
>
> State: Right. But without this particular diagnosis, that—traces wouldn't have been enough for it to be an NGRI; correct?

Bromberg:   Unlikely not.

State:   You would agree with me that the Defendant reported taking too much medication—

Bromberg:   Yes.

State:   --or overdosing.

Bromberg:   Yes, sir.

State:   Just to be clear, the facts in this case aren't a situation where somebody was taking the normal amount of medication and then had this diagnosis.   The Defendant actually took an overdose or too much and that's what caused this diagnosis, according to you?

Bromberg:   That's what it appears, yes, sir.

* * *

State:   Okay.   And earlier you had talked about the Defendant taking too much medication.   You agree that he took that medication voluntarily; correct?

Bromberg:   He took the medication voluntarily, yes, he did.

State:   Okay.

Bromberg:   Although, what we have to specify here, is that he took varying amounts of different medication at different times. So his degree of voluntary taking was measured by his—the state of mind after he took the first pill, then his state of mind begins to change.

State: So if I understand what you are saying, then, his voluntariness was changed after he had started taking medication, he—maybe later on when he took medication that wouldn't be voluntary?

Bromberg: Well, if he takes—let's say he takes three pills, and he's already starting to have some toxicity. At that point I—I don't think that he is in command of his senses enough that he is voluntarily taking it, so there are different levels. When he took the first pill, I would say that that [sic] was likely done voluntarily.

State: And in his reporting to you, when he took the overdose, was that the voluntary act or was he already involuntary by that point?

Bromberg: I think it was a voluntary act when he just began.

State: Okay. And that's when he took the large quantity of Ritalin; correct? According to him?

Bromberg: Yes.

* * *

Court: Doctor, I want you to assume that in the minutes and the hours before the events of September 11, 2012, which lie at the heart of this case, I want you to assume that Mr. Johnston had not consumed alcohol, had not consumed his wife's prescription medication, and had not taken an overdose of his

> prescribed Ritalin. Would your opinion, within a reasonable medical—strike that—reasonable psychological certainty, be that Mr. Johnston would not have been insane under Ohio law at the time of the alleged offenses?

Bromberg: Had he not taken any of the substances, no.

Court: No what?

Bromberg: He would not have been insane.

Trans. (Sept. 30, 2013), p. 7-8; 11-13; 25-26.

{¶ 32} Since Dr. Bromberg's testimony indicates that it was Johnston's voluntary overdose of medication, not a mental disease or defect, which affected his mental state on the night of the offenses, his testimony necessarily implicates voluntary intoxication as opposed to insanity. *See State v. Swanson*, 6th Dist. Wood No. WD-12-003, 2014-Ohio-549, ¶ 14 ("[w]here the insanity is simply a temporary condition brought on by the voluntary ingestion of drugs or alcohol, it does not suffice to establish [a not guilty by reason of insanity] defense"). As a result, we conclude the trial court correctly excluded Dr. Bromberg's testimony pursuant to R.C. 2901.21(C) and Johnston's argument to the contrary is overruled.

{¶ 33} Johnston also argues that Dr. Bromberg's testimony should have been allowed because it could have established a defense of involuntary intoxication. We disagree. Unlike voluntary intoxication, involuntary intoxication is an affirmative defense. (Citation omitted.) *State v. Kortz*, 2d Dist. Montgomery No. 25041, 2013-Ohio-121, ¶ 20. Dr. Bromberg's testimony, however, does not support such a defense. As noted above, Dr. Bromberg testified that Johnston's initial overdose was

ingested voluntarily. His additional testimony that Johnston's initial overdose may have rendered his subsequent bouts of intoxication involuntary creates a trivial distinction. Dr. Bromberg did not testify that someone forced Johnston to intoxicate himself. Nor did he testify that Johnston took the prescribed amount of medication and then had an adverse reaction so as to arguably make his intoxication involuntary. Rather, as the trial court found, and in which we agree, Dr. Bromberg's testimony indicates that a voluntary overdose led to Johnston's condition.

{¶ 34} For the foregoing reasons, we find no merit in any of the arguments advanced herein; therefore, Johnston's First and Second Assignments of Error are overruled.

### Third Assignment of Error

{¶ 35} Johnston's Third Assignment of Error is as follows:

DEFENDANT'S PLEA WAS NOT VOLUNTARILY, KNOWINGLY OR INTELLIGENTLY MADE BECAUSE HE PLED NO CONTEST BELIEVING HE HAD PRESERVED FOR APPEAL THE COURT'S RULING REGARDING DR. BROMBERG.

{¶ 36} Under his Third Assignment of Error, Johnston claims his no contest plea was not knowingly and voluntarily made because he entered the plea while under the impression that he would be able to appeal the trial court's ruling excluding Dr. Bromberg's testimony. Because we have already determined under the First and Second Assignments of Error that the trial court's ruling excluding Bromberg's testimony is reviewable on appeal and reviewed the same, Johnston's Third Assignment of Error is

moot and thus overruled.

## Conclusion

**{¶ 37}** Having overruled all three of Johnston's assignments of error, the judgment

of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
Lucas W. Wilder
Hon. Steven K. Dankof