[Cite as *State v. Armstrong*, 2025-Ohio-2609.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-72 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 0600 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JUSTIN ARMSTRONG | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 25, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

[[Applied Signature]]

ROBERT G. HANSEMAN, JUDGE

Epley, P.J. and Tucker, J., concur.

**OPINION**
GREENE C.A. No. 2024-CA-72

JAY A. ADAMS, Attorney for Appellant
MEGAN HAMMOND, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Justin Armstrong appeals from his conviction in the Greene County Court of Common Pleas after he pled no contest to one count of assault on a peace officer. In support of his appeal, Armstrong claims that the State's failure to collect and preserve certain video evidence from the establishment where the assault occurred violated *Brady v. Maryland*, 373 U.S. 83 (1963) and Crim.R. 16. As a result of these alleged violations, Armstrong claims that the trial court should have either dismissed his case or excluded all video evidence from the establishment in question. Armstrong also claims that the trial court erred by granting three motions in limine that requested the exclusion of certain evidence on relevancy grounds. For the reasons outlined below, we disagree with Armstrong's claims and affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On November 13, 2023, a Greene County grand jury returned an indictment charging Armstrong with one fourth-degree-felony count of assault on a peace officer and one fourth-degree-misdemeanor count of criminal trespass. The charges arose from an altercation between Armstrong and Officer David Meister of the Yellow Springs Police Department. There is no dispute that the altercation in question occurred on the evening of October 29, 2023, outside a restaurant and bar known as Peach's Grill in Yellow Springs,

Ohio.

{¶ 3} After the indictment, on November 16, 2023, Armstrong filed a demand for discovery and a motion for the trial court to order the State to preserve and disclose any and all video evidence, including video evidence from Peach's Grill. On the same day, Armstrong also filed a subpoena duces tecum that ordered the owner of Peach's Grill to provide the defense with any surveillance video footage that was recorded at Peach's Grill from 11:00 a.m. to 9:00 p.m. on the date of Armstrong's altercation with Ofc. Meister.

{¶ 4} On November 27, 2023, Armstrong filed the same motion to preserve video evidence and subpoena duces tecum in a related case from Xenia Municipal Court, i.e., Case No. 23 CRB 1380. The municipal court case arose from the same set of facts as the Greene County case; however, in the municipal court case, Armstrong was charged with misdemeanor counts of resisting arrest, obstructing official business, and criminal trespass. The Xenia Municipal Court granted Armstrong's motion to preserve video evidence, but the case was eventually dismissed at the State's request. The State then continued to prosecute Armstrong in the Greene County case.

{¶ 5} On January 4, 2024, the trial court granted Armstrong's motion to preserve video evidence that was filed in the Green County case and issued an order for the State to provide Armstrong with all discoverable information within 14 days. The next day, Armstrong appeared at court for his arraignment and pled not guilty to the indicted charges. The trial court thereafter scheduled Armstrong's case for a jury trial to commence on April 29, 2024. At the request of the defense, the April 29 trial date was continued to June 17, 2024.

{¶ 6} On June 5, 2024, Armstrong filed a combined motion for discovery, motion in limine, and alternative motion to either continue the trial or dismiss his case based on the State's failure to provide him with the requested surveillance video footage from Peach's

Grill. In the motion, Armstrong claimed that after he had filed the subpoena duces tecum requesting the video footage in question, the State contacted defense counsel and said that it was unnecessary to enforce the subpoena because the State would collect the video footage for the defense. Although Armstrong acknowledged that the State had provided him with video footage from Peach's Grill that depicted his altercation with Ofc. Meister, he nevertheless claimed that the State had failed to provide him with additional video footage that he had requested in the subpoena duces tecum, i.e., footage showing the hours before and after the altercation.

{¶ 7} Armstrong argued that the State's failure to collect and preserve the additional video evidence from Peach's Grill constituted a *Brady* violation and a violation of Crim.R. 16. As a result of these alleged violations, Armstrong moved the court to do one of the following: (1) preclude the State from presenting any video evidence from Peach's Grill at trial; (2) continue trial to permit the State to provide the video evidence at issue; or (3) dismiss the case in its entirety.

{¶ 8} In response to Armstrong's motion, the trial court scheduled an evidentiary hearing for June 10, 2024. In preparation for the hearing, the State issued a subpoena for the "manager" of Peach's Grill to attend the hearing and to bring all video evidence related to the incident in question. The manager of Peach's Grill failed to appear at the hearing, and the trial court rescheduled the proceeding for July 17, 2024. Armstrong's jury trial was also rescheduled for August 12, 2024.

{¶ 9} The State thereafter issued a subpoena for the owner of Peach's Grill, Christine Monroe-Beard, to attend the July 17 evidentiary hearing. Beard, however, did not attend the hearing, and the trial court once again had to reschedule the proceeding. The hearing was rescheduled for July 24, 2024. Monroe-Beard appeared on July 24, and the hearing went

forward as scheduled. Monroe-Beard and Ofc. Meister were the only two witnesses to testify at the hearing. The following is a summary of the information that was obtained from their testimony.

*Christine Monroe-Beard*

**{¶ 10}** Monroe-Beard co-owns Peach's Grill with her husband and is the only person who knows how to use the establishment's video surveillance system. The video surveillance system is comprised of 16 motion-activated cameras that are positioned in various interior and exterior locations at Peach's Grill. Video footage can be saved from the surveillance system, but it must be saved manually to an electronic storage device. The surveillance system can store one terabyte of memory, but once the memory is full, the system begins to record over previously recorded footage. On average, the system can store approximately a week and a half to two weeks' worth of footage before it begins to record over itself.

**{¶ 11}** On October 30, 2023, the Yellow Springs Police Department contacted Monroe-Beard and asked her to review the surveillance system at Peach's Grill. Specifically, the police department asked her to look for video footage depicting an altercation between Armstrong and Ofc. Meister on the evening of October 29, 2023. The police department gave Monroe-Beard the time frame that Ofc. Meister had arrived at Peach's Grill on the evening in question and instructed her to look only for the altercation between Armstrong and Ofc. Meister.

**{¶ 12}** Monroe-Beard reviewed all the camera feeds from the time that Ofc. Meister arrived at Peach's Grill on October 29, 2023. She did not review any other time frames from that day. While conducting her review, Monroe-Beard found footage showing the altercation

between Armstrong and Ofc. Meister. The footage began when Armstrong and Ofc. Meister encountered each other at the front of the pavilion at Peach's Grill and ended when they left the premises. No other incident involving Armstrong and Ofc. Meister was recorded from any of the establishment's camera feeds during the time frame in question. Monroe-Beard downloaded the footage of the altercation between Armstrong and Ofc. Meister onto a shared Google file and submitted the file to the Yellow Springs Police Department.

{¶ 13} Monroe-Beard claimed that it was not until a few days before the July 24 evidentiary hearing, i.e., six months after she had provided the aforementioned video footage to the police department, that she was asked to look for additional video footage. She did not know that Armstrong had previously filed a subpoena for additional video footage or a motion to preserve the video footage. Monroe-Beard claimed that if she had been asked to retrieve additional video footage, she would have done so, but neither the prosecutor's office nor the police department had requested any additional footage until a few days before the evidentiary hearing. Monroe-Beard explained that the surveillance system had long since deleted the additional video footage.

{¶ 14} Monroe-Beard testified that she has a good relationship with the Yellow Springs Police Department, that the officers know how to reach her, and that she complies with the department's requests for information. She also testified that she had received a subpoena in April 2024, which said that she needed to come to court, but she called the number on the subpoena twice and left messages advising that she would be out of the country from May through June. She claimed she had just recently learned that she was supposed to attend the previously scheduled evidentiary hearings.

*Officer Meister*

{¶ 15} On October 30, 2023, Ofc. Meister requested that two of his fellow officers, Steven Kincaid and Jeff Beam, contact Monroe-Beard and have her provide them with video footage of his altercation with Armstrong at Peach's Grill. Ofc. Meister did not know that Armstrong had filed a subpoena requesting additional video footage or a motion to preserve the video footage. Ofc. Meister claimed that between October 2023 and April 2024, the prosecutor's office never asked him to collect any additional video footage from Peach's Grill. According to Ofc. Meister, the prosecutor's office did not ask him to obtain the additional video footage until April 2024.

{¶ 16} Ofc. Meister testified that either Chief Burge or Sergeant Watson of the Yellow Springs Police Department told him that they would work on obtaining the additional video footage from Peach's Grill. Thereafter, Chief Burge advised Ofc. Meister that she had made a phone call to Peach's Grill, but that she had not received a response. On June 24, 2024, Ofc. Meister spoke with Monroe-Beard in person and discussed the evidentiary hearing and the State's request for the additional video footage. According to Ofc. Meister, Monroe-Beard told him that the additional video footage no longer existed. Ofc. Meister indicated that Monroe-Beard was typically compliant when asked to retrieve items for the police department.

{¶ 17} Concerning his altercation with Armstrong, Ofc. Meister testified that when he first encountered Armstrong on the evening in question, he observed that Armstrong had marks and scrapes on him that looked as if he had either fallen down or been dragged around by someone. Ofc. Meister recalled Armstrong telling him that he had been assaulted by a police officer and that Armstrong was unable to tell him where the alleged assault had happened. Ofc. Meister also recalled the manager of Peach's Grill telling him that Armstrong had lied about being assaulted. Ofc. Meister admitted that he did not attempt to obtain video

evidence of the alleged assault on Armstrong; he only sought video evidence of Armstrong's assault on him.

*Stipulated Facts*

{¶ 18} After Monroe-Beard and Ofc. Meister testified at the evidentiary hearing, the parties agreed to provide the trial court with a joint stipulation of facts for the determination of the motion issues. The parties' stipulated facts were presented as a timeline and are summarized below.

October 29, 2023:

- The alleged incident occurred at Peach's Grill.

November 2, 2023:

- Armstrong's defense counsel filed a demand for discovery in a related Xenia Municipal Court Case, i.e., Case No. 2023 CRB 1380, which placed the State on notice of Armstrong's demand for discovery.

November 16, 2023:

- Armstrong was indicted in the Greene County Court of Common Pleas.[1]
- Armstrong's defense counsel filed a notice of appearance, a demand for discovery, and a motion to preserve and disclose video evidence in Greene County C.P. No. 2023 CR 600.
- Armstrong's defense counsel issued a subpoena duces tecum to Peach's Grill in regard to video evidence between 11:00 a.m. to 9:00 p.m. on October 29, 2023.
- The Prosecutor's Office of Greene County called Armstrong's defense counsel and indicated that subpoenas were not necessary and that it would handle the collection of the video evidence and provide the requested video evidence from Peach's Grill.

November 27, 2023:

---

[1]Although the parties stipulated that Armstrong was indicted on November 16, 2023, the record establishes that Armstrong was actually indicted on November 13, 2023.

- Armstrong's defense counsel filed a motion to preserve and disclose video evidence in the related Xenia Municipal Court Case that specifically requested body and cruiser camera video evidence as well as all video evidence relevant to the case from Peach's Grill.

November 29, 2023:

- The Xenia Municipal Court issued an order to preserve and disclose video evidence in Case No. 2023 CRB 1380.

January 4, 2024:

- The Greene County Court of Common Pleas issued an order to preserve and disclose video evidence in Case No. 2023 CR 600.

March 12, 2024:

- Armstrong's April 29, 2024 jury trial was continued to June 17, 2024, based upon numerous prior requests for video evidence which had not yet been provided.

March 15, 2024:

- The prosecution contacted the Yellow Springs Police Department to request the names of the parties involved and information about how to reach the person in charge of the video cameras at Peach's Grill. The police responded that Peach's Grill is traditionally not compliant with such requests.

March 17, 2024:

- The Yellow Springs Police Department provided the necessary contact information for Christine Monroe-Beard, who was stated to be the person to contact in relation to video footage at Peach's Grill.

March 19, 2024:

- The State filed a subpoena for Christine Monroe-Beard to appear on April 29, 2024.

March 27, 2024:

- The aforementioned subpoena filed by the State was successfully served on Christine Monroe-Beard.

April 3, 2024:

- The prosecution once again contacted the Yellow Springs Police Department about obtaining the requested video footage.
- The Yellow Springs Police Department Chief of Police responded by saying that the department was "trying to take care of this today/tomorrow."

April 16, 2024:

- The prosecutor's office emailed Armstrong's defense counsel and told him that Peach's Grill has a history of non-compliance.

May 20, 2024:

- A second subpoena was successfully served on Christine Monroe-Beard to appear on June 17, 2024, for Armstrong's jury trial.

June 4, 2024:

- An evidentiary hearing regarding the outstanding video evidence was scheduled for June 10, 2024.

June 5, 2024:

- Given the prosecution's lack of compliance with providing the requested video evidence, Armstrong's defense counsel filed a motion for discovery, a motion in limine, and an alternative motion to continue or motion to dismiss.
- The State issued a subpoena for the "manager" at Peach's Grill.

June 7, 2024:

- The Greene County Sheriff successfully served the subpoena for the manager of Peach's Grill to appear on June 10, 2024.

June 10, 2024:

- The manager of Peach's Grill failed to appear at the evidentiary hearing, and the hearing was rescheduled to July 17, 2024.

July 1, 2024:

- The State issued a subpoena for Christine Monroe-Beard to appear on July 17, 2024.

July 2, 2024:

- Related Xenia Municipal Court Case No. 2023 CRB 1380 was dismissed.

July 12, 2024:

- Christine Monroe-Beard was successfully served with a subpoena to appear in court on July 17, 2024.

July 17, 2024:

- Christine Monroe-Beard failed to appear in court on July 17, 2024. The evidentiary hearing was rescheduled.

July 24, 2024:

- The evidentiary hearing was held.

Joint Stipulation of Facts (Aug. 8, 2024).

### Decision on Alternative Motion to Exclude/Dismiss Evidence

{¶ 19} After the parties filed the joint stipulation of facts and their post-hearing memoranda in support of their positions, on September 9, 2024, the trial court issued a decision denying Armstrong's combined motion for discovery, motion in limine, and alternative motion to continue trial or dismiss the case. In that decision, the trial court found no *Brady* or Crim.R. 16 violation on grounds that Armstrong had failed to demonstrate that the additional video footage constituted favorable, material evidence or that the additional video footage had ever been in the State's possession. The trial court also found that Armstrong had failed to demonstrate that the State's failure to collect and preserve the additional video footage was willful or that the absence of the additional video footage prejudiced him.

### Motions in Limine

{¶ 20} Following the denial of Armstrong's alternative motion to exclude/dismiss

evidence, the State filed two motions in limine that sought to preclude Armstrong from: (1) eliciting testimony on whether he could have been charged with resisting arrest as opposed to assault on a peace officer; and (2) referring to himself as a victim at trial and presenting any evidence indicating that he was involved in a separate altercation with another individual that preceded his altercation with Ofc. Meister. The State also orally asked the trial court to prohibit Armstrong from introducing evidence of the parties' discovery dispute regarding the additional video footage from Peach's Grill. In support of each motion in limine, the State argued that the subject evidence was inadmissible because it was irrelevant and would potentially confuse or mislead the jury. Following a hearing on the State's motions in limine, the trial court granted all three motions.

*Plea and Sentencing*

{¶ 21} After the trial court granted the State's motions in limine, Armstrong entered a plea agreement with the State and pled no contest to the indicted charge of assault on a peace officer. In exchange for Armstrong's no contest plea, the State agreed to dismiss the misdemeanor count of criminal trespass and to recommend that Armstrong be sentenced to community control with a 180-day jail sanction. The State also agreed to not oppose early release after Armstrong served 60 days in jail. The trial court accepted Armstrong's no contest plea, found him guilty of assault on a peace officer, and then sentenced him to community control for five years with a 180-day jail sanction.

{¶ 22} Armstrong now appeals from his conviction and raises two assignments of error for review.

**First Assignment of Error**

{¶ 23} Under his first assignment of error, Armstrong contends that the trial court erred by denying his alternative motion to dismiss his case or exclude all video evidence from Peach's Grill as a result of the State's failure to collect and preserve the additional video footage that he requested. As argued in his alternative motion, Armstrong contends that the State's failure to collect and preserve the additional video footage constituted a *Brady* violation and a violation of Crim.R. 16. We, however, disagree.

*Brady Violation Claim*

{¶ 24} "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). In *Brady*, 373 U.S. 83, the United States Supreme Court held that a state violates the Due Process Clause of the Fourteenth Amendment by suppressing evidence favorable to the accused where the evidence is material to guilt or punishment. *Brady* at 87. "To establish a *Brady* violation, a defendant must demonstrate (1) that the evidence is favorable to the defendant, because it is either exculpatory or impeaching, (2) that the evidence was willfully or inadvertently suppressed by the state, and (3) that the defendant was prejudiced as a result." *State v. Brown*, 2024-Ohio-749, ¶ 30, citing *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). "Evidence is material—or prejudicial—' "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." ' " *Id*., quoting *Turner v. United States*, 582 U.S. 313, 324 (2017), quoting *Cone v. Bell*, 556 U.S. 449, 469-470 (2009).

{¶ 25} Because a *Brady* claim raises issues of due process that are mixed questions of law and fact, our standard of review is de novo. *State v. Smith*, 2018-Ohio-4691, ¶ 25 (2d

Dist.), citing *United States v. Phillip*, 948 F.2d 241, 251 (6th Cir. 1991) (Other citations omitted.); *State v. Newton*, 2018-Ohio-1392, ¶ 15 (8th Dist.) (a trial court's decision involving a motion to dismiss on the ground that the state failed to preserve exculpatory evidence is reviewed de novo). "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft*, 2004-Ohio-493, ¶ 27 (3d Dist.).

{¶ 26} In this case, Armstrong's *Brady* violation claim lacks merit because there was no suppression of evidence by the State. It is well established that " ' "*Brady* and its progeny apply to evidence possessed either by the prosecutor or by someone over whom he has control." ' " *State v. McClurkin*, 2009-Ohio-4545, ¶ 57 (10th Dist.), quoting *State v. Zirkle*, 1997 WL 567938, *3 (4th Dist. Aug. 27, 1997), quoting *United States v. Rodriguez,* 917 F.2d 1286, 1291 (11th Cir. 1990). Although "[p]rosecutors have 'a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police[,]' " *State v. Sanders*, 92 Ohio St.3d 245, 261 (2002), quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), " ' "[m]aterials not possessed by the government cannot be suppressed within the meaning of *Brady*." ' " *McClurkin* at ¶ 57, quoting *Zirkle* at *3, quoting *Rodriguez* at 1291. That is, "the state cannot suppress records that it does not have—and that have never been in the possession of a state agent." (Citations omitted.) *State v. Jury*, 2022-Ohio-4419, ¶ 17 (6th Dist.). Therefore, " '[w]here the state has no control over evidentiary materials, it "is incapable of suppressing them in violation of *Brady*." ' " *State v. Mowery*, 2024-Ohio-4507, ¶ 18 (2d Dist.), quoting *State v. Azali*, 2023-Ohio-4643, ¶ 72 (8th Dist.), quoting *State v. Lawson*, 64 Ohio St.3d 336, 344 (1992); *accord United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003) ("*Brady* does not apply to materials that are not

'wholly within the control of the prosecution.' "), quoting *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir. 1998).

{¶ 27} In this case, the record establishes that the additional video footage that Armstrong claims was suppressed by the State was never in the possession of the State or the Yellow Springs Police Department. The additional footage was deleted by the surveillance system at Peach's Grill well before the State asked the police department to retrieve it. Accordingly, the State could not have suppressed evidence that neither it nor the police department ever possessed.

{¶ 28} Armstrong's *Brady* violation claim also lacks merit because Armstrong failed to establish that the additional video footage at issue amounted to favorable, material evidence. As previously discussed, it is unknown what the additional video footage would have shown since it was deleted by the surveillance system at Peach's Grill. Therefore, whether the additional video footage was exculpatory in nature is pure speculation. "Courts have consistently rejected *Brady* claims that are too speculative, requiring defendants to substantiate claims that the evidence in question was favorable and material." *State v. McGuire*, 2018-Ohio-1390, ¶ 28 (8th Dist.).

{¶ 29} Armstrong suggests that the additional video footage *could* have depicted events supporting his claim that he was assaulted by another individual before he encountered Ofc. Meister. However, even if we assume that the additional footage showed that Armstrong was the victim of a prior assault, such footage would not be exculpatory or material to Armstrong's case. This is because the relevant issues were whether Armstrong knowingly caused or attempted to cause physical harm to Ofc. Meister in violation of R.C. 2903.13(A),(C)(5)(a) and whether he knowingly entered or remained at Peach's Grill without privilege to do so in violation of R.C. 2911.21(A)(1). Video footage purportedly showing that

Armstrong was assaulted by another individual before Ofc. Meister arrived at Peach's Grill would have no bearing on whether Armstrong committed the aforementioned violations.

{¶ 30} Furthermore, to the extent that Armstrong is suggesting that his behavior toward Ofc. Meister was affected by physical trauma that he sustained from the alleged prior assault, we note that diminished capacity is not a defense in Ohio. *State v. Gray*, 2016-Ohio-5869, ¶ 27 (2d Dist.), citing *State v. Fulmer*, 2008-Ohio-936, ¶ 66. Therefore, whether Armstrong's behavior was affected by any injuries from a prior assault was immaterial to the charged offenses.

{¶ 31} At most, the additional video footage sought by Armstrong constituted potentially useful evidence. *See State v. Geeslin*, 2007-Ohio-5239, ¶ 10-15; *State v. Beavers*, 2012-Ohio-6222, ¶ 18 (2d Dist.) ("The fact that a defendant has previously requested that an item be preserved suggests that the evidence may be potentially useful, but it does not reasonably suggest that the evidence is exculpatory when the exculpatory nature was not apparent prior to its destruction."). "[T]he failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith." *State v. Ross*, 2012-Ohio-4977, ¶ 12; *Geeslin* at ¶ 15. "The term 'bad faith' generally implies something more than bad judgment or negligence." *Ross* at ¶ 12. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.*, citing *State v. Grigley*, 2007-Ohio-3159, ¶ 25 (2d Dist.).

{¶ 32} In this case, there is no dispute that the State provided Armstrong with the video footage from Peach's Grill that showed the altercation that was the subject of the charged offenses. The State's failure to timely request that the Yellow Springs Police Department acquire the additional video footage from Peach's Grill—footage that was not

germane to Armstrong's altercation with Ofc. Meister or his trespass—did not establish a dishonest purpose or conscious wrongdoing by the State. The State eventually tried to have the police department recover the additional footage for Armstrong, but the request was made too late due to the surveillance system's deleting the additional footage. There is nothing in the record establishing that the delay resulted from a dishonest purpose or a conscious wrongdoing so as to constitute bad faith. This is especially true since there would have been no reason for the State to believe that the additional footage was relevant to Armstrong's case. Accordingly, there was no due process violation given the lack of bad faith on the part of the State.

{¶ 33} For the foregoing reasons, Armstrong has failed to establish that the State's failure to collect and preserve the additional video footage from Peach's Grill constituted a *Brady* violation or otherwise violated his constitutional right to due process.

*Crim.R. 16 Violation Claim*

{¶ 34} "Crim.R. 16 governs the discovery process and delineates information subject to disclosure and information not subject to disclosure, and it sets forth the proper time period for motions for discovery." *State v. Cleaver*, 2007-Ohio-5977, ¶ 24 (2d Dist.). If a party fails to comply with the disclosure requirements of Crim.R. 16, the trial court has the discretion to "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 35} "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party."

*State v. Darmond*, 2013-Ohio-966, ¶ 20. "In exercising its discretion when the discovery violation is committed by the State, trial courts should consider: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *State v. Hunt*, 2019-Ohio-2352, ¶ 30 (2d Dist.), citing *Darmond* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442 (1983), syllabus. "[W]hen deciding whether to impose a sanction, [the trial court] must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus. "The purpose of the discovery rules 'is to prevent surprise and the secreting of evidence favorable to one party.' " *Darmond* at ¶ 19, quoting *Lakewood* at 3.

{¶ 36} "The trial court's response to an alleged discovery violation under Crim.R. 16 is reviewed for an abuse of discretion." *State v. Miller*, 2023-Ohio-2508, ¶ 41 (2d Dist.), citing *Parson* at 445. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *Darmond* at ¶ 34. "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. McHenry*, 2021-Ohio-3118, ¶ 16 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34, citing *State v. Morris*, 2012-Ohio-2407, ¶ 14.

{¶ 37} Upon review, we find that the trial court reasonably determined that the State had not committed a Crim.R. 16 discovery violation that warranted the dismissal of Armstrong's case or the exclusion of any video evidence. Although the State did not attempt

to procure the additional video footage until five or six months after Armstrong had requested it, as previously discussed, the additional video footage was irrelevant to Armstrong's charged offenses; accordingly, its absence did not prejudice Armstrong. Because the State timely provided Armstrong with the relevant video footage that depicted the altercation that formed the basis of his charges, and because the eventual deletion of the additional footage was in no way attributable to the State or the Yellow Springs Police Department, but was an automated action by the surveillance system at Peach's Grill, we find that the trial court reasonably determined that the State's failure to collect and preserve the additional video footage was not a willful violation of Crim.R. 16. For the foregoing reasons, the trial court did not abuse its discretion by denying Armstrong's request for a discovery sanction in the form of dismissing his case or excluding all video evidence from Peach's Grill.

{¶ 38} Armstrong's first assignment of error is overruled.

## Second Assignment of Error

{¶ 39} Under his second assignment of error, Armstrong contends that the trial court erred by granting the State's three motions in limine that requested the court to preclude Armstrong from: (1) eliciting testimony on the subject of whether he could have been charged with resisting arrest as opposed to assault on a peace officer; (2) referring to himself as a victim at trial and presenting any evidence indicating that he was involved in a separate altercation with another individual that preceded his altercation with Ofc. Meister; and (3) introducing evidence of the parties' discovery dispute that concerned the additional video footage from Peach's Grill.

*Effect of Armstrong's No Contest Plea*

{¶ 40} As previously discussed, Armstrong entered a no contest plea to assault on a peace officer. "A defendant who pleads no contest ordinarily waives the right to appeal an adverse ruling on a motion in limine because such errors must be presented by an objection, proffer, or ruling on the record." (Citations omitted.) *State v. Orrell*, 2024-Ohio-1194, ¶ 16 (7th Dist.), citing *State v. Barr*, 2023-Ohio-1017, ¶ 13 (7th Dist.) and *State v. French*, 72 Ohio St.3d 446, 450 (1995). More specifically, this court has explained that:

> The granting or denial of a motion in limine does not determine the admissibility of the questioned evidence. Instead, "it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible." (Citations omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986). Hence, "a motion in limine, if granted [or denied], is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *Id*. at 201-202. *Accord State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 751, ¶ 17.

*State v. Jones*, 2021-Ohio-3050, ¶ 57 (2d Dist.).

{¶ 41} "Because there is no finality, '[a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial.' " *Id*. at ¶ 58, quoting *State v. Leslie*, 14 Ohio App.3d 343, 344 (2d Dist. 1984). Therefore, " 'a no-contest plea generally does not preserve for appeal a trial court's ruling on a motion in limine.' " *State v. Walters*, 2023-Ohio-2701, ¶ 25 (2d Dist.), quoting *State v. Monticue*, 2007-Ohio-4615, ¶ 16 (2d Dist.).

{¶ 42} There is, however, an exception if the motion in limine is "the functional

equivalent of a motion to suppress, which determines the admissibility of evidence with finality." *State v. Johnston*, 2015-Ohio-450, ¶ 16 (2d Dist.); *accord Walters* at ¶ 25-28. The essential difference between a motion to suppress and a motion in limine " 'is that the former is capable of resolution without a full trial, while the latter requires consideration of the issue in the context of the other evidence.' " *Johnston* at ¶ 17, quoting *State v. Hall*, 57 Ohio App.3d 144, 146 (8th Dist.1989). A " 'definitive or exclusionary motion in limine not only prevents evidence from being introduced, but also prevents any mentioning of the excluded evidence during trial.' " *Walters* at ¶ 25, quoting *State v. Napier*, 2017-Ohio-246, ¶ 20 (12th Dist.), citing *Johnston* at ¶ 16. Therefore, "a plea of no contest preserves the defendant's right to appeal from an adverse ruling on a motion in limine when it is the equivalent of a motion to suppress." (Citations omitted.) *Johnston* at ¶ 22.

{¶ 43} Upon review, we find that the trial court's ruling on the State's second motion in limine—the motion that sought to preclude Armstrong from referring to himself as a victim at trial and from presenting any evidence indicating that he was involved in a separate altercation that preceded his altercation with Ofc. Meister—was a tentative, interlocutory, precautionary ruling that did not determine the admissibility of the evidence with finality. We reach this conclusion because the trial court stated the following in its entry granting the State's motion in limine: "[T]he notion that Defendant may have been in an altercation is pure speculation. *Should evidence be adduced at trial to support the alleged altercation, this Court may reconsider this Order.*" (Emphasis added.) Judgment Entry Granting State's Motion in Limine (Sept. 26, 2024), p. 2, fn.1.

{¶ 44} The foregoing language establishes that the trial court's ruling did not determine the admissibility issue with finality; instead, it indicated that the trial court might change its decision depending on what evidence was adduced at trial. Therefore, the State's

second motion in limine was not the functional equivalent of a motion to suppress. Because of this, and because Armstrong entered a no contest plea, the trial court's ruling on the State's second motion in limine was not preserved for appellate review.

{¶ 45} In contrast, the trial court's rulings on the State's first and third motions in limine determined the admissibility issues in those motions with finality. Those rulings precluded Armstrong from introducing evidence on whether Armstrong could have been charged with resisting arrest as opposed to assault on a peace officer and evidence that pertained to the parties' discovery dispute. Given the nature of that evidence, we find that nothing could have been presented at trial that would have changed the trial court's rulings. Accordingly, the evidentiary issues were capable of being resolved without the matter going to trial. Also, the trial court did not include any language in its corresponding entries that indicated its rulings might change. Rather, the entries indicated that the trial court's decisions were final and that Armstrong was precluded from introducing evidence on resisting arrest and the parties' discovery dispute. Therefore, the State's first and third motions in limine were the functional equivalent of motions to suppress, which means the trial court's rulings on those motions were appealable despite Armstrong's entering a no contest plea.

{¶ 46} "While appellate courts generally review rulings on motions in limine for an abuse of discretion, this is improper if the ruling is the functional equivalent of a suppression ruling." *Johnston,* 2015-Ohio-450, at ¶ 27 (2d Dist.), citing *State v. Greaves*, 2012-Ohio-1989, ¶ 10 (6th Dist.). "In that instance, appellate courts should use the standard of review for motions to suppress." *Id*., citing *Greaves* at ¶ 10-11. " 'Under the standard of review for a motion to suppress, an appellate court must accept as true the trial court's supported findings of fact and then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Id*. at ¶ 28, citing

*State v. Leveck*, 2011-Ohio-1135, ¶ 8 (2d Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

*Analysis of the State's First and Third Motions in Limine*

{¶ 47} The State's first and third motions in limine sought to preclude the evidence at issue on relevancy grounds. It is well established that only relevant evidence is admissible and that irrelevant evidence is inadmissible. Evid.R. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "In other words, there must be some probative value to the evidence." *State v. Sutherland*, 2021-Ohio-2433, ¶ 24 (2d Dist.). Relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." Evid.R. 403(A).

{¶ 48} Because Armstrong was charged with assault on a peace officer in violation of R.C. 2903.13(A),(C)(5)(a), and criminal trespass in violation of R.C. 2911.21(A)(1), the relevant issues to be tried were whether Armstrong knowingly had caused or attempted to cause physical harm to Ofc. Meister and whether Armstrong knowingly had entered or remained at Peach's Grill without privilege to do so.

{¶ 49} As previously discussed, the State's first motion in limine sought to preclude Armstrong from presenting evidence on whether he could have been charged with resisting arrest as opposed to assault on a peace officer. Evidence suggesting that Armstrong could have been charged with resisting arrest would not have made any fact of consequence more or less probable. The question of what charge to file is an issue committed to the sound discretion of the prosecutor. *State v. Halpin*, 2008-Ohio-4136, ¶ 22 (2d Dist.). The fact that

the prosecutor could have, but did not, charge Armstrong with resisting arrest was an extraneous issue that had no bearing on whether Armstrong was guilty of assault on a peace officer or criminal trespass. Inserting such extraneous matters at trial could have confused or misled the jury. It could also have resulted result in Ofc. Meister's being asked to give testimony differentiating between the offenses of resisting arrest and assault on a peace officer—testimony that the officer was not qualified to give. *See State v. Leasure*, 2015-Ohio-5327, ¶ 45-46 (4th Dist.) (finding that a police officer who was asked to give testimony differentiating the offenses of physical control and an OVI offense was not qualified to give such testimony because " '[a] police officer is not qualified to testify on legal questions' "), quoting *State v. Ghaster*, 2009-Ohio-2117, ¶ 32 (8th Dist.). Furthermore, resisting arrest is not a lesser-included offense of assault on a peace officer, *State v. Totty*, 2010-Ohio-1234, ¶ 30-31 (2d Dist.); therefore, evidence pertaining to resisting arrest would not have been relevant for the purpose of proving a lesser-included offense.

{¶ 50} Because evidence pertaining to resisting arrest would not have made any fact of consequence more or less probable, the trial court correctly determined that such evidence was irrelevant and inadmissible. Accordingly, the trial court properly granted the State's first motion in limine.

{¶ 51} The State's third motion in limine, which sought to preclude Armstrong from presenting evidence that pertained to the parties' discovery dispute over the additional video footage from Peach's Grill, was also properly granted by the trial court. This is because the discovery dispute had no bearing on whether Armstrong had committed the charged offenses and would not have made any fact of consequence more or less probable. The discovery dispute had already been heard and ruled on by the trial court. Presenting evidence concerning the discovery dispute would have served no purpose other than to

shine a negative light on the State and the Yellow Springs Police Department.

{¶ 52} Because evidence pertaining to the discovery dispute would not have made any fact of consequence more or less probable, the trial court correctly determined that such evidence was irrelevant and inadmissible. Accordingly, the trial court properly granted the State's third motion in limine.

{¶ 53} Armstrong's second assignment of error is overruled.


## Conclusion

{¶ 54} Having overruled both assignments of error raised by Armstrong, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.